449 So.2d 442 (1984)
STATE of Louisiana
v.
Jerry WILMS.
No. 82-KA-2236.
Supreme Court of Louisiana.
April 2, 1984.
*443 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Louise Korns, William C. Credo, III, Steve Wimberly, Asst. Dist. Attys., for plaintiff-appellee.
John Craft, New Orleans, Martha E. Sassone, Gretna, Indigent Defender Board, for defendant-appellee.
DIXON, Chief Justice.
Jerry Wilms was charged with armed robbery, in violation of R.S. 14:64. He moved to suppress an inculpatory statement which he had given to police shortly after the incident. The trial court denied the motion. Wilms then pleaded guilty, reserving his right to appeal the ruling on the motion to suppress as set forth in State v. Crosby, 338 So.2d 584 (La.1976). The trial court sentenced him to serve seven years at hard labor without benefit of parole, probation or suspension of sentence.
On the night of December 15, 1981 two men were robbed at gunpoint of $2071.25 at a Roy Rogers Restaurant in Jefferson Parish. Wilms and two others were apprehended by police as they fled toward their van which was parked in a nearby Delchamps parking lot. Wilms' wife, Cyndi, and another woman were in the van and were also arrested. They were given their Miranda rights and taken to the police station.
According to Wilms and Cyndi, a police officer hit Cyndi in the stomach and kicked her as she was climbing into the police van. Wilms testified that the officers tossed Cyndi around "like a rag doll." Cyndi was two and one-half months pregnant at the time. The state did not call any of the arresting officers as witnesses.
At the station, Sergeant Balser was put in charge of the interrogation. After talking to the other suspects, he interviewed Wilms. Wilms told him that Cyndi was pregnant and that an arresting officer had hit her in the stomach. Balser then brought Cyndi in. She said she was bleeding and in pain. A female guard also told Balser that Cyndi needed medical attention.
Balser then permitted Wilms and Cyndi to confer with one another. Afterward, they indicated they were willing to give a statement. At 2:00 a.m. Wilms signed a waiver of rights form and gave Balser a six page statement. At 3:19 a.m. Cyndi signed a waiver form and gave a statement. Wilms implicated himself and denied that Cyndi knew of the robbery. Cyndi likewise denied any knowledge of the robbery.
At 7:30 a.m. Cyndi was examined in the medical office of the Jefferson Parish prison. She was "spotting" and bleeding. She miscarried eight days later.
*444 Balser denied that he made any threats or promises in return for the two statements. Wilms, however, testified that Balser told him that he would see what he could do about getting Cyndi to a doctor. Wilms and Cyndi also testified that Balser told them that a judge would "likely" be more lenient with Wilms and would let Cyndi go if their stories matched. Wilms contends that his inculpatory statement was therefore involuntary due to the "promises of the police to be light on him, the promises to release his wife, and the fear that his pregnant wife, already injured, would be further jeopardized and their baby lost."
Before the state may introduce a confession into evidence it has the burden to prove beyond a reasonable doubt that the statement was "free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises." R.S. 15:451; C.Cr.P. 703(D); State v. Neslo, 433 So.2d 73, 80 (La.1983). The state must specifically rebut a defendant's allegations of police misconduct in procuring the statement. State v. Neslo, supra. The question of voluntariness of a confession, including a determination of the defendant's state of mind, must be resolved from the facts and circumstances of the particular case. State v. Serrato, 424 So.2d 214, 221 (La.1982). In addition, the trial judge's conclusions as to the credibility of witnesses are accorded great weight by this court in reviewing rulings on admissibility. State v. Neslo, supra.
Where the alleged threat concerns someone other than the defendant, "[f]ear that police will inflict additional harm on another has been recognized as a substantial factor in determining the voluntary nature of the confession." State v. Johnson, 363 So.2d 684, 686 (La.1978). See also State v. Williams, 383 So.2d 369, 371-72 (La.1980), where this court considered but rejected the defendant's claim that his confession was involuntary because he heard his wife crying in the next room.
In State v. Johnson, supra, the defendant contended that his confession was involuntary because he was afraid police would continue to beat a co-defendant and beat Johnson, himself, if he did not confess. In analyzing the situation, we focused the inquiry on whether the beating of the co-defendant actually occurred and whether the defendant actually believed that the beatings would continue if he did not confess. State v. Johnson, supra, at 686. Faced with a choice between believing the police and believing the defendants, we deferred to the trial judge's conclusions as to credibility and held the statement admissible.
In the present case the trial judge did not assign written or oral reasons. Wilms and Cyndi contended at trial that Balser made an implied promise to get medical attention for Cyndi and an express promise of leniency for Wilms and of Cyndi's release in exchange for their statements. Balser denied making any such promises or threats. The trial judge may well have decided to believe Balser and disbelieve the Wilms story. In light of the great weight accorded his conclusions as to credibility, we could affirm on this basis alone.
However, the trial judge may also have concluded that Balser did make such remarks to Wilms but that such remarks were insufficient to render the statement inadmissible. If so, his decision must likewise be affirmed.
There is no doubt based on the present record that Cyndi Wilms was inexcusably struck in the stomach by an arresting officer. The state did not call any witnesses to specifically rebut the allegations of police misconduct. The state's only witness did not even make a general disclaimer. Balser was not at the arrest scene and did not know what happened there.
Neither Wilms nor his wife testified, however, that they were afraid of further misconduct once they arrived at the station. Wilms' fear was that Cyndi would not receive medical attention. Wilms expressed this fear to Balser. Balser told Wilms he *445 would see what he could do. He did not predicate medical services on the giving of a statement.
Wilms contends, however, that such an implication became clear when Balser then brought Cyndi in and told them that a judge would likely be lenient with Wilms and would let Cyndi go if their stories matched. Logically, such a promise makes sense only if Wilms had already claimed that his wife had nothing to do with the robbery. This occurred before Balser spoke with Cyndi. Balser allowed them to confer. Some fifteen minutes later, they indicated they were willing to give statements. Balser testified that Cyndi did not appear to be in pain, and it was already late. He indicated to them that he still had to see about a doctor and would go ahead and take the statements.
Wilms was no doubt concerned about his wife and experienced psychological pressure in this regard. However, he was no doubt also feeling pressure as a result of being apprehended in front of a restaurant as a suspect in an armed robbery. One of his companions had a gun. The eyewitnesses were there. This was Wilms' first felony. Moreover, he probably felt responsible for having exposed his wife and child to such a risk.
Wilms testified that he and his wife discussed their options, including whether they wanted an attorney. They decided that neither had any reason to lie, according to Wilms. Both are high school graduates. He served in the army. As revealed in colloquys with the judge and on cross-examination, Wilms knew his rights and waived them. Under the circumstances, the trial judge may well have concluded that Wilms' choice to give a statement was knowing and deliberate rather than a result of his belief that his wife would not otherwise receive medical attention. As for promises, if Balser made them, they were under these circumstances "more likely musings not much beyond what this defendant might well have concluded for himself." State v. Petterway, 403 So.2d 1157, 1160 (La.1981). See also State v. Dison, 396 So.2d 1254 (La.1981).
Accordingly, Wilms' conviction and sentence are affirmed.
DENNIS, J., dissents for the reasons assigned by LEMMON, J.
LEMMON, J., dissents and assigns reasons.
LEMMON, Justice, dissenting.
This case presents precisely the type of police conduct that decisions such as Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), were designed to eliminate. First, according to unrebutted evidence, one policeman hit defendant's pregnant wife in the stomach. Then, a second policeman withheld medical attention for over eight hours until her husband had given a confession, although he was well aware (by his own admission) that she needed medical attention.[1]
Our approving the validity of defendant's confession under these circumstances not only encourages such abusive conduct, but also departs from any commonsense view of "voluntariness".[2]
I would order the confession suppressed.
NOTES
[1] It matters little whether the injury to defendant's wife was accidental or intentional, or even justified. The officer who took defendant's statement was aware of the need for medical attention and of defendant's concern for his wife's well-being, and the officer's pressing on with the interrogation under these circumstances undercut any voluntariness on defendant's part.
[2] Since this is a Crosby review of a motion to suppress the confession, the case has not yet gone to trial on the merits. At this stage, the dispute over the admissibility of the confession appears to be academic, since defendant was virtually caught in the act of a crime to which there were several eyewitnesses.