597 So.2d 1235 (1992)
STATE of Louisiana
v.
Riley Joseph BOUDREAUX
No. CR91-768.
Court of Appeal of Louisiana, Third Circuit.
April 16, 1992.
Gerald J. Block, Lafayette, for defendant-appellant.
Michael Harson, Asst. Dist. Atty., Lafayette, for plaintiff-appellee.
Before DOMENGEAUX, C.J., LABORDE, J., and PATIN[*], J. Pro Tem.
*1236 DOMENGEAUX, Chief Judge.
The defendant, Riley Joseph Boudreaux, was charged with second degree murder, a violation of La.R.S. 14:30.1. After a trial by jury, the defendant was found guilty as charged and was sentenced to life imprisonment without benefit of parole, probation or suspension of sentence. He appeals his conviction, assigning two errors.

FACTS
On December 25, 1989, the victim, Joseph Murray Randal, was driving in Lafayette with his brother-in-law, Joseph Sylvester, as a passenger. As they stopped for the traffic signal at the intersection of Mudd Avenue and Elizabeth Street, an unidentified vehicle pulled up along side the Randal vehicle. The driver of the unidentified vehicle fired a single shotgun blast which struck Mr. Randal in the face, killing him. Mr. Sylvester was also wounded by the blast from fragments which struck his wrist.
The evidence presented at trial indicates that the defendant, Riley Boudreaux, and Mr. Randal's wife had engaged in a relationship during a period when the Randals were separated. After the shooting, Mr. Boudreaux became a suspect in the murder investigation.
In the early morning hours of December 26, 1989, Mr. Boudreaux called his home from Texas and found out that the police were there. He spoke with his cousin, Major Warren Celestine of the Lafayette Parish Sheriff's Office, who had come to the house at the request of the defendant's sister. Major Celestine convinced the defendant to return to Lafayette and to come to Major Celestine's home. Upon arriving at Major Celestine's home, Major Celestine brought the defendant to the police station where the defendant later confessed to firing the weapon which killed Mr. Randal. Major Celestine testified that the defendant stated earlier that he and Mr. Randal had an argument in which Mr. Randal pulled a pistol on the defendant. The defendant claims that he was carrying a shotgun because of threats made to him by Mr. Randal.
During a hearing on the voluntariness of the defendant's confession, the existence of a videotape of interviews with Mr. Boudreaux and the Lafayette City Police was discovered. The videocassette was admitted as evidence during the voluntariness hearing, although all parties admitted they had not yet viewed the tape because the defendant's confession was not on the videotape. After the court ruled that Mr. Boudreaux's confession was voluntary, the court and counsel viewed the police department's videotape. After viewing the tape, defense counsel discovered that the defendant may have requested an attorney prior to giving any inculpatory statements. The defendant made an oral motion to suppress his confession based upon the denial of his constitutional right to the assistance of counsel. After viewing the videotape and entertaining oral arguments, the trial court denied the motion to suppress.

ASSIGNMENT OF ERROR NO. 1
The defendant contends the trial court erred in denying his motion to suppress. The defendant asserts that during the conversation with Detective Green, he invoked his right to an attorney.
The videotape viewed by the court and counsel includes interviews of the defendant with Detectives Ted Vincent and Francis Green of the Lafayette City Police Department and Major Warren Celestine of the Lafayette Parish Sheriff's Department. The audio quality of the tape is poor, and portions of various conversations are inaudible.
During the interview with Detective Green, the defendant made reference to an attorney. Because of the poor quality of the tape, the parties have offered different interpretations of his statement. The State argues the defendant said, "Since you are trying to stick it all on me, I might as well get an attorney." Defense counsel argues the defendant stated, "I might have to get an attorney." The next voice on the tape is that of Detective Green, who replied, "We are not going to put it on you; we are going to give you exactly what happened."
*1237 After this exchange, the defendant continued talking to Detective Green for only a few minutes. The detective then left the room. Later, Major Celestine came into the room to speak to the defendant as a friend and a family member. This conversation was also videotaped; however, the video recorder was inadvertently turned off after this conversation.
Subsequently, the defendant agreed to give a statement to Detective Green. That statement was recorded on an audio cassette. Prior to recording the statement, Detective Green advised the defendant of his Miranda rights and asked the defendant to sign a waiver form. The audio tape does not indicate that the defendant informed Detective Green that he wished to invoke his right to counsel. The defendant then confessed to the shooting.
After reviewing the tape, the trial court concluded the defendant never invoked his right to counsel. In ruling that the confession was admissible, the trial judge stated:
All right. This has been played and overplayed. We played the tape back, I think, maybe seven or eight times. I don't agree with you that that's what was said. I think that when you look at the whole tape from beginning to end and you consider all of what was going on, I think he [the defendant] was running through a thought process in his mind. I don't think he requested or ever requested an attorney during that tape. I don't think that there was an assertion of his right to an attorney. He was thinking, y'all are going to stick this on me. Am I the only suspect? Maybe I ought to getmaybe I ought to get my attorney or some mention of an attorney, but he never said I don't want to talk to you. He never said I want an attorney. He did not assert that right. And as a matter of fact, I think when you take it all, in the case, the Court has to look at this as a fact situation. I think if the facts had indicated he wanted an attorney, then I would grant the motion to suppress. I don't believewhen you review this tape, I don't believe that's what he was doing. He obviously was in trouble. He obviously was the suspect, but he wasn't asserting his right to an attorney, I don't feel. And it's a factual question. The Court will deny the motion to suppress.
In Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the United States Supreme Court made it clear that when an accused invokes his right to have counsel present during a custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation, even if he has been advised of his rights. An accused, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police. State v. Boothe, 532 So.2d 203 (La.App. 3d Cir. 1988).
Under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and numerous subsequent cases, interrogation must quickly cease when an attorney is specifically requested. See, State v. Hersman, 511 So.2d 476 (La.App. 5th Cir.1987), writ denied, 521 So.2d 1165 (La.1988). However, in Nash v. Estelle, 597 F.2d 513 (5th Cir.1979), the court recognized that when a suspect's desires are expressed in an equivocal fashion, it is permissible for the questioning official to make further inquiry to clarify the suspect's wishes. The Fifth Circuit in Nash stated:
While the suspect has an absolute right to terminate station-house interrogation, he also has the prerogative to then and there answer questions, if that be his choice. Some persons are moved by the desire to unburden themselves to confessing their crimes to police, while others want to make their own assessment of what to say to their custodians.
"[A] blanket prohibition against the taking of voluntary statements or a permanent immunity from further interrogation, regardless of the circumstances, *1238 would transform the Miranda safeguards into wholly irrational obstacles to legitimate police activity, and deprive suspects of an opportunity to make informed and intelligent assessments of their interest." Michigan v. Mosley, 423 U.S. 96, 102, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975). When, as in the case at bar, a desire for immediate talk clearly appears from the suspect's words and conduct, but he also states he wants a lawyer (i.e.,) "I would like to have a lawyer, but I would rather talk to you"(,) it is sound and fully constitutional police practice to clarify the course the suspect elects to choose. The precedent of Priest [409 F.2d 491, 493 (5th Cir.1969) ] does not bar this clarification.
Miranda also contemplated that when confronted with his options, a suspect might be indecisive on whether he would like an attorney:
[If a suspect] is indecisive in his request for counsel, there may be some question on whether he did or did not waive counsel. Situations of this kind must necessarily be left to the judgment of the interviewing agent.
The Louisiana Supreme Court has repeatedly held that the trial judge's determination of a confession's admissibility will not be disturbed on appeal unless it was not supported by the evidence. State v. Nuccio, 454 So.2d 93 (La.1984); State v. Vessell, 450 So.2d 938 (La.1984); State v. Wilms, 449 So.2d 442 (La.1984). When reviewing the trial court's ruling on admissibility, the reviewing court may look to the totality of the evidence presented at the suppression hearing and the trial itself. State v. Wilms, supra.
We find no error in the trial court's factual conclusion that the defendant's reference to an attorney, as shown on the tape, was not an invocation of his right to counsel. The poor audio quality of the tape makes it impossible to discern the defendant's exact words. However, viewing the relevant portions of the tape, we find no indication that the defendant requested the immediate presence of an attorney or that he desired the interview to cease. The reference to an attorney was tied to the defendant's statement that the police were trying to "stick it" or "put it" all on him. Detective Green replied that he only wanted to get what happened. Under these circumstances, we find the detective was justified in further questioning the defendant to clarify the defendant's wishes. See Nash, supra. We, therefore, find this assignment of error has no merit.

ASSIGNMENT OF ERROR NO. 2
In this assignment of error, the defendant requests that we review the record for any errors patent. We have done so, and find no such errors.
For the above reasons, the conviction of the defendant, Riley Joseph Boudreaux, is affirmed.
AFFIRMED.
NOTES
[*] Honorable John A. Patin, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.