677 So.2d 495 (1996)
STATE of Louisiana, Plaintiff-Appellee,
v.
Leroy KELLY, Jr., Defendant-Appellant.
No. Cr 95-1663.
Court of Appeal of Louisiana, Third Circuit.
May 8, 1996.
*496 Glenn G. Cortello, Charles F. Wagner, Dist. Atty., Alexandria, for State of Louisiana.
Willard Trichel Armitage Jr., Alexandria, for Leroy Kelly Jr.
Before DOUCET, C.J., and THIBODEAUX and DECUIR, JJ.
DECUIR, Judge.
The defendant, Leroy Kelly, Jr., was charged with eight counts of simple burglary in violation of La.R.S. 14:62. Prior to the institution of prosecution, an Application for Appointment of Sanity Commission was filed by the defendant and granted by the trial court. On May 9, 1995, prior to a sanity hearing, defendants waived formal arraignment and entered a plea of not guilty to all charges. Defendant was found capable to proceed to trial on July 24, 1995. On August 1, 1995, defendant filed a Motion to Suppress his inculpatory statement, which was denied. Defendant then entered a guilty plea to all eight (8) charges of simple burglary on October 23, 1995. The plea was entered with the reservation of rights pursuant to State v. *497 Crosby, 338 So.2d 584 (La.1976). Defendant was sentenced on October 23, 1995 to four (4) years at hard labor on each count, to run concurrent. Defendant appeals his conviction, alleging one assignment of error.

FACTS
On December 27, 1994, the defendant was detained for questioning by the Alexandria City Police. Prior to questioning, defendant was advised of his rights pursuant to Miranda. Defendant then admitted to committing eight burglaries.

ERRORS PATENT
Pursuant to La.Code Crim.P. art. 920, we have reviewed the record for errors patent on its face. We find one error patent.
Defendant was arraigned after he requested the appointment of a sanity commission but before a determination was made as to his competency to proceed to trial. No other proceedings occurred prior to the determination of defendant's sanity. According to La.Code Crim.P. art. 642:
When the question of the defendant's mental incapacity to proceed is raised, there shall be no further steps in the criminal prosecution, except the institution of prosecution, until the defendant is found to have the mental capacity to proceed.
Therefore, it was an error patent for the defendant to be arraigned after he raised the issue of his possible mental incapacity. State v. Beauchamp, 510 So.2d 22 (La.App. 1 Cir.), writ denied, 512 So.2d 1176 (La.1987); State v. Nicholas, 462 So.2d 1295 (La.App. 5 Cir. 1985); State v. Sharlow, 493 So.2d 213 (La. App. 5 Cir.), writ denied, 496 So.2d 329 (La.1986). However, since defendant did not contemporaneously object to the arraignment occurring before the sanity hearing, he waived any objection to such error, thereby rendering the error patent harmless. Beauchamp, 510 So.2d at 29; and State v. Charles, 450 So.2d 1287 (La.1984).

ASSIGNMENT OF ERROR
By this assignment, defendant claims the trial court erred in not suppressing his statement. He alleges the statement was given without a valid waiver of his constitutional rights. On December 27, 1994, defendant was detained by police for questioning, and admitted to committing eight burglaries. Defendant moved to suppress the statement on July 27, 1995, alleging that he requested the assistance of counsel before he gave his statement and was denied that request. A hearing on the Motion to Suppress was held on August 4, 1995. After introducing a copy of defendant's statement, the state directed the court's attention to page three of the statement. Prior to that portion of the statement, defendant had been advised of his Miranda rights, particularly his right to an attorney:
Q: Then I advised you have the right to talk to a lawyer before we ask you any questions and have him with you during any questions, did you understand that?
A: Huh huh (yes).
Q: Can you say yes or no?
A: Yes.
Q: And you initialed it stating you understand it, is that correct?
A: Yes.
Q: Then I advised you if you cannot afford a lawyer, one will be appointed to represent you before any questions if you wish. Did you understand that part?
A: Yes.
Q: And you initialed it stating you understand it?
A: Yes.
Q: Then I advised you if you decide to answer questions now without a lawyer present you may stop answering at any time, did you understand that?
A: Yes.
Q: And you init[i]alled it stating that you understood your rights?
A: Yes.
Q: All these rights that I have read to you, did you understand them now?
A: Yes.
Q: Did you understand them when I first read them to you earlier?
A: Yes.
Q: Okay. And you signed the rights stating you understood them, is that correct?

*498 A: Yes.
Q: Then I advised you of your waiver of rights, is that correct?
A: Yes sir.
Q: Then I read it to you that I had been read this statement of my rights and I understand what my rights are?
A: Yes.
Q: And I'm willing to waive my rights, make a statement, ask questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me. I read that to you and you signed right there stating you understood, is that correct?
A: Yes.
The following colloquy, which occurred after the above colloquy but before defendant gave his inculpatory statement, is the portion of the statement at issue in the present case:
Q: Did you have any questions about your rights?
A: Yea.
Q: Sir? What, what question do you have?
A: After all this here, do I still get a lawyer?
Q: Yes you can still get a lawyer. Okay. We talked voluntarily about several burglaries that happened, is that correct?
At the Motion to Suppress hearing, one of the officers who took defendant's statement, Detective Daryl Terry, stated that he did not think the defendant asked for a lawyer during his confession. Detective Terry testified that the defendant was very cooperative, and he just wanted to make sure he would still be able to get a lawyer. When asked on cross-examination if defendant acted as if he "didn't have his full mental facilities," Detective Terry responded, "No, sir. He was, ah, he was very cooperative. He was very well [sic] of what was going. He was very definite in explaining to us parts of the case, where the items were."
In denying defendant's Motion to Suppress, the trial court stated the following:
The key words that I got out of the transcript was after this here. Now, that shows an intent to come at a later date. It does not show an intent of immediacy and nowness, I need it now. I need my lawyer now or can I have a lawyer. If ... from the reading of that transcript it appears as though his intent was to tell about what he had on his chest in regard to the crimes and after this I want a lawyer for trial. Now after this here is the three words that bother me about him having a violation of his right to counsel. I don't see where he has ... where any violation has occurred of his right to counsel after he's been explained exactly what every other defendant... every other person suspected of crime is being told. And he says after this here do I still get something. I feel that the confession was given knowingly, voluntarily. Now somewhat intelligently at least from his standpoint of what he understands happens during the crime ... the different crimes....
The state bears the burden proving, beyond a reasonable doubt, that an inculpatory statement was freely and voluntarily made in order for the statement to be admissible at trial. State v. Comeaux, 514 So.2d 84 (La. 1987). The Louisiana Supreme Court has also held that the admissibility of a confession is a matter for the trial judge, and his conclusions will not be disturbed unless they are not supported by the evidence as a whole. State v. Nuccio, 454 So.2d 93 (La. 1984).
Defendant claims his statement regarding his ability to obtain counsel at a later date was a "request for counsel." Defendant seems to concede in his brief that State v. Hersman, 511 So.2d 476 (La.App. 5 Cir. 1987), writ denied, 521 So.2d 1165 (La.1988), indicates a request such as defendant's does not preclude the admission of the statement into evidence. Before the defendant in Hersman gave a taped confession, he asked for assurance that he would be able to speak to an attorney before he went to court. Id. at 483. The officer told Hersman that was his right, and Hersman then gave his statement. Although the court in Hersman did not explicitly hold that such a request by the defendant was not a request for an attorney so as *499 to exclude the confession, the court did uphold the admissibility of the confession on the totality of the evidence.
Other cases also indicate that an inquiry such as the one made by the defendant in the present case does not constitute an assertion of defendant's right to counsel. In McNeil v. Wisconsin, 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991), the Supreme Court described the Miranda-Edwards right to counsel as follows: "The purpose of the Miranda-Edwards guarantee ... is to protect a quite different interest: the suspect's `desire to deal with the police only through counsel.'" Id. at 178, 111 S.Ct. at 2209. The Court went on to say that the invocation of that guarantee "... requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney in dealing with custodial interrogation by the police." Id.
In State v. Boudreaux, 597 So.2d 1235 (La.App. 3 Cir.), writ denied, 609 So.2d 223 (La.1992), the defendant claimed his statement to the police should have been suppressed because he invoked his right to an attorney. Upholding the trial court's admittance of the statement, this court stated the following:
We find no error in the trial court's factual conclusion that the defendant's reference to an attorney, as shown on the tape, was not an invocation of his right to counsel. The poor audio quality of the tape makes it impossible to discern the defendant's exact words. However, viewing the relevant portions of the tape, we find no indication that the defendant requested the immediate presence of an attorney or that he desired the interview to cease. The reference to an attorney was tied to the defendant's statement that the police were trying to `stick it' or `put it' all on him. Detective Green replied that he only wanted to get what happened. Under these circumstances, we find the detective was justified in further questioning the defendant to clarify the defendant's wishes.
Id. at 1238.
Likewise, the trial court in the present case did not err in finding no indication that the defendant requested the immediate presence of an attorney or that he desired the interview to cease. Defendant stated, "After all this here, do I still get a lawyer." We find this statement was not a request for the immediate presence of an attorney.
Defendant also argues, however, that the detectives should have inquired further as to defendant's mention of an attorney. In Boudreaux, this court cited Nash v. Estelle, 597 F.2d 513 (5th Cir.1987) as stating:
When, as in the case at bar, a desire for immediate talk clearly appears from the suspect's words and conduct, but he also states he wants a lawyer (i.e.) `I would like to have a lawyer, but I would rather talk to you'(,) it is sound and fully constitutional police practice to clarify the course the suspect elects to choose.
Boudreaux, 597 So.2d at 1238.
The court further cited Miranda as stating:
[If a suspect] is indecisive in his request for counsel, there may be some question on whether he did or did not waive counsel. Situations of this kind must necessarily be left to the judgment of the interviewing agent.
Id.
First, the defendant's mention of an attorney in the present case was not an "indecisive request for counsel." It was simply a question as to whether the defendant would be able to obtain counsel after the confession. Thus, no further inquiry as to defendant's waiver of his right to counsel was necessary. Secondly, even if there was a question as to whether or not the defendant waived his right to counsel, according to Miranda, the situation must be left to the judgment of the interviewing agent. In the present case, the detective told the defendant he would still be able to obtain an attorney after the confession. The detective then began asking defendant about the burglaries. The defendant never mentioned an attorney again. The detectives were justified in their belief that the defendant had, in fact, waived his right to have counsel present because of the defendant's apparent willingness to answer questions without another mention of an attorney, *500 and the definite waiver of counsel made by defendant just before the comment in question. In fact, Detective Terry testified at the Motion to Suppress hearing, that the defendant was very cooperative.
Finally, defendant argues the trial court failed to consider the defendant's mental retardation. The defendant's psychological reports prepared by Drs. Stuart Kutz and Dr. John MacMahon were jointly introduced at the Motion to Suppress hearing. The reports state the defendant was competent to stand trial. The defendant offered the introduction of the reports to show that both doctors found defendant to be mentally retarded. In Comeaux, 514 So.2d at 92, the supreme court explained:
Moderate mental retardation and low intelligence or illiteracy do not of themselves vitiate the ability to knowingly and intelligently waive constitutional rights and make a free and voluntary confession. The crucial factor in all such cases is whether or not the defendant was able to understand the rights being explained to him.
The defendant in the present case was able to understand the rights being explained to him. Dr. MacMahon reported, "While Mr. Leroy Kelly did appear to be mentally retarded, he did have a fair knowledge of his legal rights and courtroom procedures." Dr. Kutz reported in pertinent part:
In regard to [the defendant's] capacity to proceed to trial:
1) The defendant does understand the nature of the charges and can appreciate their seriousness;
2) He does understand what defenses are available;
3) He does have an awareness of his basic civil rights;
4) He does understand the consequences of conviction;
5) He is able to recall and relate the facts pertaining to his actions and whereabouts at certain times;
6) He is able to assist counsel in locating and examining relevant witnesses;
7) He is able to maintain a consistent defense;
8) He is able to listen to the testimony of witnesses and inform his attorney as to any distortions or misstatements;
9) If necessary to defense strategy, he is capable of testifying in his own defense;
10) His mental condition would not be expected to significantly deteriorate under the stress of trial.
Additionally, Detective Terry testified at the Motion to Suppress hearing that the defendant did not appear to be mentally retarded and was cooperative and definite in explaining parts of the case and in explaining where items might be.
We further note the detectives asked defendant if he could read or write. Defendant responded that he could not read or write, and that he was in special ed. The detective then asked him, "But if I explained something to you, could you understand that?" The defendant responded, "Yes. I stand, understand some of it." After each Miranda right was explained to him, the defendant responded that he understood the right. Defendant also stated that he understood the fact that he was waiving the rights read to him.
Accordingly, we find the state met its burden of proving the defendant's confession was freely and voluntarily given. This assignment lacks merit.

CONCLUSION
For the foregoing reasons, the trial court's denial of the Motion to Suppress is affirmed.
AFFIRMED.