STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

19-237

STATE OF LOUISIANA

VERSUS

RICHARD DOUGLAS WESTBROOK

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 7527-17
HONORABLE DAVID A. RITCHIE, DISTRICT JUDGE

**********

VAN H. KYZAR
JUDGE

**********

Court composed of John D. Saunders, Elizabeth A. Pickett, and Van H. Kyzar, Judges.

AFFIRMED

**Paula Corley Marx**
**Louisiana Appellate Project**
**P. O. Box 82389**
**Lafayette, LA 70598-2389**
**(337) 991-9757**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Richard Douglas Westbrook**

**John Foster DeRosier**
**14th JDC District Attorney**
**Shelley A. Deville**
**Assistant District Attorney**
**P. O. Box 3206**
**Lake Charles, LA 70602-3206**
**(337) 437-3400**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **State of Louisiana**

**KYZAR, Judge.**

Defendant, Richard Douglas Westbrook, appeals his sentence of forty years at hard labor after pleading guilty to manslaughter, in violation of La.R.S. 14:31. For the reasons herein, we affirm the sentence.

### FACTS AND PROCEDURAL HISTORY

Defendant was indicted on March 30, 2017 by a Calcasieu Parish Grand Jury charging that on or about February 14, 2017, he committed the second degree murder of Julie LeBlanc McQuilliams in violation of La.R.S. 14:30.1. After initially pleading not guilty, Defendant subsequently changed his plea to not guilty by reason of insanity. A written motion to appoint a sanity commission was filed wherein Defendant, through counsel, stated that he may not have the mental capacity to proceed, resulting in the court appointing a sanity commission by order signed on March 28, 2017. Following a hearing on June 21, 2017, Defendant was deemed competent to proceed to trial.

Defendant's trial commenced on August 27, 2018, and the jury was empaneled and sworn on August 28. Immediately thereafter, Defendant changed his plea from not guilty by reason of insanity to guilty of manslaughter, in violation of La.R.S. 14:31, pursuant to a plea offer by the State. The trial court was presented with a form entitled "Felony Plea of Guilty and Waiver of Constitutional Rights," signed by Defendant and his counsel, who advised that the same had been discussed and understood. Thereafter, the trial court advised Defendant of his constitutional rights as it pertains to the plea, to which Defendant responded that he understood and waived these rights. The trial court further advised Defendant that it was not bound to accept any recommendation of sentence which may be presented, to which Defendant stated that he understood.

During the plea, the State placed into the record the facts of the case as follows:

> [I]f called to trial, the State would intend to prove that on or about February the 14th, 2017, at approximately 4:00 a.m., after the defendant had been up all night partaking in Methamphetamines with his roommates, he did set out towards the My Place Bar, which was located near his home.
>
> During that route -- or during that trip, he did encounter the victim, Julie McQuilliams, where an incident took place between them. Approximately twenty minutes later, he returned to his home and indicated that he had killed her.
>
> His roommates did go to the location that he pointed them to where they did find the deceased body of Julie McQuilliams.
>
> During an interview with police, the defendant did indicate that, as he was walking past McQuilliams, they did have some interaction, but that at some point she did begin to attack him.
>
> During that interview, detectives did discover some evidence of him having been attacked on the back of his head. That's us taking into account any excited issues that occurred, or actions that occurred, during this incident.
>
> She was found to have been stabbed to death. This occurred within Calcasieu Parish.

The trial court questioned Defendant, who admitted to the recited facts before tendering the plea of guilty to the reduced charge of manslaughter, which the trial court accepted. The sentencing took place on November 7, 2018, during which the trial court heard the testimony of the victim's uncle and aunt. It also heard the statement of Defendant, as follow:

> Good morning, Your Honor. I'd like -- first off, I'd like to apologize to the whole family. And this was – They're right; it was senseless, you know. Drugs had overtaken my life, and I was spiraling down, and this is just a culmination of it, and I apologize to the family, and I wish it never would have happened. I -- I really wished it never would have happened. But here we are today, and all we can do is move forward.
>
> And I, just for the record, Mr. Casanave said I had three, I've only got one felony conviction.

2

Defendant was thereafter sentenced to serve forty years at hard labor. After pronouncing the sentence, counsel for Defendant inquired as to whether Defendant could participate in substance abuse and mental health programs available through the Department of Corrections. The trial court then recommended that any such program participation not result in good time credits towards the sentence. On December 27, 2018, Defendant filed a motion to reconsider the sentence urging only that the sentence imposed is excessive. The motion was denied on the same date, without a hearing. Defendant thereafter filed for this appeal. Herein, he asserts two assignments of error:

> 1. The maximum 40- year hard labor sentence is excessive for this offense and offender with substance abuse and mental health issues.

> 2. The trial court erred in recommending denial of good time as good time calculations are solely within the authority of the department of corrections.

## DISCUSSION

### *Errors Patent*

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find that there is an error patent, although we determine the same to be harmless error on the record here.

Defendant entered a plea of not guilty on April 17, 2017, and then a plea of not guilty by reason of insanity on May 5, 2017. A written motion questioning Defendant's mental incapacity was filed on or about March 28, 2017, resulting in the trial court signing an order appointing a sanity commission the same day. The hearing on the motion was held on June 21, 2017 wherein the trial court found that the Defendant had the requisite mental capacity to proceed to trial. However, in this interim period, between March 28, 2017 and the determination of competency

3

on June 21, 2017, Defendant orally moved to and did change his plea from not guilty to not guilty by reason of insanity as set forth above. Further, during this same period, the following motions and pleadings were filed: (1) a pro se motion of Defendant for discovery and inspection; (2) a pro se motion of Defendant for a preliminary examination; (3) a Motion for Discovery and Inspection on behalf of Defendant; (4) a Motion for Discovery and For Production of Initial Police Report, Criminal History and NCIC Reports and Brady Motion on behalf of Defendant; (5) a Joint Stipulation filed and signed by the State and Defendant, through counsel; (6) the State's Production of Discoverable Materials; (7) an Authorization to Permit Discovery; (8) the State's Motion for Discovery and Inspection; (9) a Melendez-Diaz Notice and Intent to Use La.R.S. 15:499 Certificates of Analysis; and (10) a Notice of Intent.

Louisiana Code of Criminal Procedure Article 642 provides:

> The defendant's mental incapacity to proceed may be raised at any time by the defense, the district attorney, or the court. When the question of the defendant's mental incapacity to proceed is raised, there shall be no further steps in the criminal prosecution, except the institution of prosecution, until the defendant is found to have the mental capacity to proceed.

It was error to allow steps in furtherance of the prosecution to take place between the trial court signing the motion appointing a sanity commission and June 21, 2017, when Defendant was found competent to proceed. However, that does not end the inquiry. "Whether a patent error, like other statutory error, requires reversal must be evaluated in light of the potential impact on the fairness of the proceedings[,]" and "[j]ust as non-prejudicial violations of the accused's statutory rights do not mandate reversal, an error in procedure which does not affect the fundamental fairness of the process does not necessarily require reversal

4

and remand, unless prejudice is shown." *State v. White*, 404 So.2d 1202, 1204-1205 (La.1981) (citing La.Code Crim.P. art. 921).

In *State v. Kelly*, 95-1663 (La.App. 3 Cir. 5/8/96), 677 So.2d 495, this court held that it was patent error to arraign the defendant after he raised the issue of mental incapacity but before a determination was made as to his competency to proceed to trial. This court found the lack of a contemporaneous objection resulted in a waiver of the error and rendered the error patent harmless. Accordingly, we reach the same conclusion in the present case as to the entry of the first plea of not guilty in April 2017 and the subsequent withdrawal of the not guilty plea and substitution of the plea of not guilty by reason of insanity in May 2017.

We further find the filing of the various motions, pleadings, and actions between March 28, 2017 and June 21, 2017, while steps in furtherance of the prosecution, resulted in no harm or prejudice to Defendant, nor did any of these actions affect the fundamental fairness of the process. As reflected, these actions were taken by all parties, including Defendant himself in the filing of pro se motions. The filing of such motions by Defendant and counsel for Defendant and the failure to object to any of the filings by the State waives any objection thereto. *State v. Beauchamp*, 510 So.2d 22 (La.App. 1 Cir.), *writ denied*, 512 So.2d 1176 (La.1987). Accordingly, while we find error in allowing any actions in furtherance of the prosecution to occur during this period, we find the error to be harmless in the case at hand.

### *Excessive Sentence*

Defendant first asserts that the sentence of forty years for his conviction of manslaughter in his particular case amounts to an unconstitutionally excessive sentence. He argues that the trial court failed to adequately consider his lengthy history of mental health and substance abuse issues, including methamphetamine

5

use since age fourteen. He notes his first mental health hospitalization occurred when he was in the third grade, with the most recent hospitalization being ten to fifteen years ago following a suicide attempt. Defendant further notes that from 2006 to 2015 he was seen in a clinic for symptoms of anxiety, auditory and visual hallucinations, and substance abuse with his discharge diagnosis being schizophrenia, major depressive disorder, recurrent episode, severe, and unspecified personality disorder. Defendant alleged that although sanity commission physician, Dr. Hayes, opined in his report that the schizophrenic diagnosis was not supported, the working diagnosis at the correctional center was schizophrenia and substance abuse, including alcohol, methamphetamine, marijuana, and cigarette smoking. He also contends the trial court failed to properly consider the fact that the victim attacked Defendant and his response was "surely affected" by his mental state and impairment caused by substance abuse. He points out that he was high on methamphetamines at the time the victim attacked him and that he had taken a large amount of Ambien and was sleep deprived.

Louisiana Code of Criminal Procedure Article 881.1 requires that a written or oral motion to reconsider sentence be filed within thirty days following the imposition of sentence unless a longer time is set by the court. Defendant was sentenced on November 7, 2018, but his motion to reconsider sentence was not filed until December 27, 2018. Louisiana Code of Criminal Procedure Article 881.1(E) provides: "Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review."

6

While we can decline to consider Defendant's appeal of his sentence here, this court has on some occasions chosen to review claims of excessiveness despite the lack of a contemporaneous oral motion at sentencing and the filing of a motion to reconsider sentence. *See State v. Johnlouis*, 09-235 (La.App. 3 Cir. 11/4/09), 22 So.3d 1150, *writ denied*, 10-97 (La. 6/25/10), 38 So.3d 336, *cert. denied*, 562 U.S. 1150, 131 S.Ct. 932 (2011). In such cases, the consideration was limited to "only whether the defendants' sentences were unconstitutionally excessive." *State v. Breaux*, 17-406, p. 5 (La.App. 3 Cir. 11/2/17), 232 So.3d 675, 678, *writ denied*, 17-1967 (La. 10/15/18), 253 So.3d 1309. In the interest of justice, and given our discretion, we will proceed to review Defendant's claim as a bare claim of unconstitutional excessiveness. *See Id.*

In addressing this argument, we must also consider whether Defendant can legally contest his sentence on appeal as the State argues that Defendant is precluded from appealing his sentence as he pleaded guilty pursuant to a plea agreement to the charge of manslaughter with the understanding that the maximum sentence of forty years could be imposed. As provided for by La.Code Crim.P. art 881.2(A)(2), a defendant "cannot appeal or seek review of a sentence imposed in conformity with a plea agreement which was set forth in the record at the time of the plea." However, the record here is devoid of any evidence of an agreement as to a sentence, although the record does reflect an agreement to amend the second-degree murder charge to manslaughter and to forego habitual offender sentencing enhancement proceedings on entry of a guilty plea. Indeed, the trial court commented at the time of the entry of the plea that it would not be bound by any agreement as to sentencing. Further, a plea of guilty to a statute providing for a range of sentences including a maximum sentence is not, without more, an agreement to the maximum sentence.

7

Because the State fails to indicate in the record any agreement with Defendant regarding a sentencing cap, the State is evidently arguing that the ninety-nine year maximum per La.R.S. 14:64 is tantamount to a sentencing cap. However, this court has repeatedly denied the contention that the statutory maximum sentence for a crime is a sentencing cap which would preclude a defendant from appealing their sentence under La.Code Crim.P. art. 881.2(A)(2).

*State v. Moten*, 14-1169, p. 3 (La.App. 3 Cir. 3/4/15), 158 So.3d 972, 974, *writ denied*, 15-609 (La. 2/5/16), 186 So.3d 1162.

Louisiana courts have laid out the following guidelines with regard to excessive sentence review:

> Sentences within the statutory sentencing range can be reviewed for constitutional excessiveness. *State v. Sepulvado*, 367 So.2d 762 (La.1979). In *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331, a panel of this court discussed the review of excessive sentence claims, stating:

>> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La. 6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

> Further, in reviewing the defendant's sentences, the appellate court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes. *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57 (citing *State v. Telsee*, 425 So.2d 1251 (La.1983)), *writ denied*, 99-433 (La. 6/25/99), 745 So.2d 1183. In *State v. Smith*, 02-719, p. 4

(La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061, a panel of this court observed that:

> While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, 958[, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615 (1996)].

*State v. Soileau*, 13-770, 13-771, pp. 4-5 (La.App. 3 Cir. 2/12/14), 153 So.3d 1002, 1005-06, *writ denied*, 14-452 (La. 9/26/14), 149 So.3d 261.

In *State v. Baker*, 06-1218 (La.App. 3 Cir. 4/18/07), 956 So.2d 83, *writ denied*, 07-320 (La. 11/9/07), 967 So.2d 496, *and writ denied*, 07-1116 (La. 12/7/07), 969 So.2d 626, this court adopted the fifth circuit's three factor test from *State v. Lisotta*, 726 So.2d 57, which established that an appellate court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes.

When pronouncing the sentence, the trial court noted its consideration of aggravating and mitigating circumstances as required by La.Code Civ.P. art. 894.1 and acknowledged that it was not going to go through and list each factor. We agree that the trial court need not articulate every aggravating and mitigating circumstance outlined in La.Code Crim.P. art. 894.1 but that the record must reflect that the guidelines were adequately considered in particularizing the sentence to the defendant. *State v. Smith*, 433 So.2d 688 (La.1983).

The trial court here clearly considered multiple factors including the heinous nature of the crime, referring to the murder as "a merciless, brutal and evil act." In referencing the crime scene and autopsy photos of the victim's injuries, the judge

9

stated, "I've seen many, many, many, many horrible, horrible pictures over the years -- the last 25, 26 years that I've been in this business, but those are among, you know, the worst that I've seen." The court further considered the benefits of the plea bargain wherein Defendant was permitted to plead guilty to the reduced charge of manslaughter, thus sparing him a life sentence, without parole.[1]

In mitigation, the trial court considered Defendant's claim that his mental illness and drug use was at least partially responsible for his actions. While recognizing that Defendant had mental health issues, the trial court stated that "[Defendant's] mental issues were drug induced" and that "most people who have mental health issues are not violent" and "most people who use drugs are not violent people" but that "for those people who are, who become violent when they're on drugs, society has got to be protected from those people, especially ones who . . . would have no regard for human life, whatsoever . . . as you didn't have on this particular night." The court furthered considered Defendant's claim of self defense at the time of the killing by asserting that the victim jumped on him, but it's clear the trial court did not believe Defendant's account or the necessity for his actions. Specifically, the trial court noted that Defendant was twice the size of the victim and that even "[if] she jumped on your back, and I saw that -- that ridiculous story, you know" . . . "that stuff happens all the time" . . . and that "[p]eople the same size, you know, get in fights, or whatever, and people don't end up dead 99.9 percent of the time."

We agree with the trial court that the nature of this particular crime perpetrated by Defendant was of the most heinous in nature. The victim was stabbed and cut many times. She was physically much smaller than Defendant and

---

[1] Not specifically referenced by the trial court but made clear in the record is the agreement by the State to forego the filing of habitual offender sentence enhancement proceedings on Defendant's plea to the reduced charge of manslaughter.

was not armed herself. Despite this, Defendant claimed that he was merely defending himself from the victim as an excuse for his actions. The facts of the case would have supported a finding of second-degree murder resulting in a life sentence; an appropriate factor to consider at sentencing. The trial court's use of the plea bargain as a factor in determining the sentence to be imposed on Defendant is an appropriate consideration. *State v. Lanclos*, 419 So.2d 475 (La.1982). Further, Defendant has prior felony convictions supporting the sentence imposed. Prior criminal activity is a factor that may be considered by the court under La.Code Crim.P. art. 894.1(B)(7) and is not limited to convictions. *State v. Brown*, 410 So.2d 1043 (La.1982). The trial court adequately considered Defendant's prior history of substance abuse and mental health issues. Thus, considering the record herein, we find no abuse of the trial court's great discretion in imposing the maximum sentence possible for the crime of manslaughter to which a guilty plea was entered in this case.

### *Recommendation of No Good Time*

Defendant next asserts that the trial court erred in recommending that Defendant not receive good time credits for any participation in drug rehabilitation programs during his incarceration. The record indicates the trial court stated that it would recommend Defendant not be granted good time credits towards his sentence for participation in substance abuse and mental health programs within the Department of Corrections. Specifically, it stated:

> I would say that, normally those programs allow for additional good time. But I would say that, you know, I would recommend that he only be allowed to participate in those programs if he doesn't get extra time off of his sentence.
>
> That's just my - - That would be my recommendation, because I don't - - I don't think he deserves any of that good time. I - - I'd like to see him serve the whole 40 years, flat time, without - - without any good time or parole eligibility, but the law doesn't - - you know, the

11

law doesn't give me that discretion.  But I'm - - I'm saying that for the record.

As acknowledged by the trial court, the denial of good time is solely within the purview of the Department of Corrections.  *State v. Washington*, 19-39 (La.App. 3 Cir. 6/5/19), 274 So.3d 98.  A trial court's recommendation to the Department of Corrections as to matters under the sole control of the department does not carry the force of law.  *State v. Cobbs*, 12-773 (La.App. 5 Cir. 5/16/13, 119 So.3d 258.  The trial court here made a recommendation only and did not deny good time eligibility.  Thus, there was no error by the trial court, and Defendant's claim is without merit.

## DECEE

For the reasons herein set forth, we affirm Defendant's sentence of forty years in the Department of Corrections, at hard labor, with credit for time served.

**AFFIRMED.**