687 So.2d 114 (1996)
STATE of Louisiana
v.
John NIXON.
No. 96 KW 0134.
Court of Appeal of Louisiana, First Circuit.
December 20, 1996.
Writ Denied March 7, 1997.
*115 Doug Moreau, District Attorney by Darwin Miller, Assistant District Attorney, Baton Rouge, for Plaintiff/Appellee State of Louisiana.
James P. Manasseh, Baton Rouge, for Defendant/Appellant John Nixon.
Before WATKINS and KUHN, JJ., and GUIDRY, J. Pro Tem.[1]
KUHN, Judge.
John Nixon was charged by bill of information with possession with intent to distribute cocaine, a violation of La. R.S. 40:967(A). He pled not guilty and filed a motion to suppress confession. The trial court denied the motion; and defendant filed an application for supervisory writs with this court seeking review of the trial court's ruling. We denied the application; and defendant filed an application with the Supreme Court. The Supreme Court granted the writ and remanded the case to this court for briefing, argument and opinion. 96-0665 (La.4/26/96), 672 So.2d 685. In a single assignment of error, defendant argues the court erred when it denied the motion to suppress confession.
On January 12, 1995, Detective Charles Corbitt of the East Baton Rouge Parish Sheriff's Office received information from a confidential informant concerning a man selling drugs from a particular residence in Baton Rouge. Later that day, Corbitt had the informant make a controlled buy of cocaine at the residence, and then Corbitt secured and executed a warrant to search the residence. During the search, the officers seized a variety of drug paraphernalia, over twenty thousand dollars in cash, one rock of crack cocaine, and a plastic bag containing 2.3 grams of cocaine.
Defendant arrived at the residence during the search. Corbitt advised defendant of his Miranda rights by reading the rights from a card. Corbitt told defendant he had the right to remain silent, that anything he said could and would be used against him in court, that he had the right to talk to an attorney and to have an attorney present during questioning, that, if he could not afford an attorney, one would be appointed to represent him, and that he could decide at any time to stop answering questions. Corbitt then asked defendant if he understood the rights. Defendant appeared to understand his rights and told Corbitt he did. Corbitt did not question defendant at that time. During the search, defendant showed the officers which room was his. The officers found the 2.3 grams of cocaine and most of the cash in defendant's room. After the search was completed, defendant and his girlfriend, Emma Johnson, were arrested.
After defendant was transported to the Sheriff's Office, Corbitt questioned him. Before taking the statement, Corbitt again advised defendant of his rights. The advice of rights and the subsequent statement were recorded on audio tape. Some of defendant's comments are inaudible on the tape. After stating each right, Corbitt asked defendant if he understood the right; and defendant responded *116 that he did. When Corbitt told defendant he had the right to talk to a lawyer, defendant asked something like, "Can I get my lawyer?" or "I can get my lawyer?" Corbitt responded that all defendant had to do was to stop talking. When defendant again asked if he could have his lawyer present during the questioning, Corbitt replied, "Not during this statement. I mean we can't get you one that quick."[2] Following an inaudible comment by defendant, Corbitt asked defendant if he wanted to stop talking and get a lawyer. Defendant responded that he wanted to go ahead and make the statement without an attorney so his "old lady" could be released. Corbitt again asked defendant if he wanted to go ahead and make a statement, and defendant replied that he did. Before asking questions about the offense, Corbitt advised defendant that an attorney would be appointed to represent him if he could not afford to hire an attorney and that he could decide at any time to exercise the rights and not make any statements. Although some of defendant's comments are inaudible on the tape, Corbitt testified that he made it clear to defendant that, if he wanted to make the statement at that time, his attorney was not present and Corbitt would not be able to provide him with an appointed attorney during the questioning.
The entire statement, including the advice of rights, lasted approximately five minutes. Defendant told Corbitt the front bedroom where the money was found was his room. Defendant said he got the money from gambling and selling drugs, and he admitted the cocaine was his. He also said his girlfriend did not have anything to do with selling the cocaine. Corbitt testified that, based upon defendant's statement and other information received during the investigation, Corbitt released defendant's girlfriend.
Defendant argues that, by asking if his attorney could be present, he invoked the right to counsel and Corbitt should not have questioned him any further. Initially, we note that in the motion to suppress defendant sought suppression of only "written" confessions or statements on the ground the statements were not made freely and voluntarily and/or were made without defendant being advised of the right to remain silent and the right to counsel. However, it is evident from the testimony and exhibits that defendant gave an oral statement and not any written statements. Despite this deficiency in the motion to suppress, the trial court considered the merits of defendant's argument and we will also.
The state bears the burden of proving that an accused who makes an inculpatory statement or confession during custodial interrogation was first advised of his constitutional rights and made an intelligent waiver of those rights. State v. Davis, 94-2332, p. 8 (La.App. 1st Cir. 12/15/95), 666 So.2d 400, 406, writ denied, 96-0127 (La.4/19/96), 671 So.2d 925. Prior to any questioning, the accused must be advised that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Miranda v. Arizona, 384 U.S. 436, 479, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966). If the suspect clearly asserts his right to have counsel present during the interrogation, law enforcement officers must immediately cease questioning the suspect. Edwards v. Arizona, 451 U.S. 477, 485, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981). See Davis v. United States, 512 U.S. 452, 453, 114 S.Ct. 2350, 2352, 129 L.Ed.2d 362 (1994).
The issue presented in this writ concerns the nature of defendant's request for counsel. Courts must give a broad rather than a narrow interpretation to a suspect's request for counsel. State v. Abadie, 612 So.2d 1, 5 (La.), cert. denied, 510 U.S. 816, *117 114 S.Ct. 66, 126 L.Ed.2d 35 (1993). In Miranda, the United States Supreme Court instructed that if the suspect "indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning." 384 U.S. at 444-45, 86 S.Ct. at 1612. The determination of whether or not a suspect "actually invoked" the right to counsel is an objective inquiry. Davis, 512 U.S. at 458, 114 S.Ct. at 2355. If a suspect makes a reference to an attorney that is ambiguous or equivocal ("in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel"), the questioning need not cease. Davis, 512 U.S. at 459, 114 S.Ct. at 2355 (emphasis in original). If the suspect articulates his desire to have counsel present "sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney," the questioning must stop. Davis, 512 U.S. at 459, 114 S.Ct. at 2355. In Davis, the court indicated it would often be good police practice for interviewing officers to clarify whether or not a suspect actually wants an attorney present in those situations where the suspect makes an ambiguous or equivocal request for counsel. 512 U.S. at 461, 114 S.Ct. at 2356. See also State v. Boudreaux, 597 So.2d 1235, 1237 (La.App. 3d Cir.), writ denied, 609 So.2d 223 (La.1992); State v. Hersman, 511 So.2d 476, 481 (La. App. 5th Cir.1987), writ denied, 521 So.2d 1165 (La.1988).
In the instant case, defendant never asked for counsel. He asked if his attorney could be present during the questioning. Corbitt's testimony and our review of the tape recording establish that Corbitt explained to defendant that, if he wanted to make the statement then, an attorney was not available at that time. Once defendant understood an attorney was not available, Corbitt asked defendant twice if he still wanted to make the statement and defendant replied that he did. Miranda does not require the police to provide an accused with an attorney at the jailhouse. If the police cannot provide appointed counsel, Miranda requires only that the police not question a suspect unless he waives the right to counsel. 384 U.S. at 474, 86 S.Ct. at 1628. See Duckworth v. Eagan, 492 U.S. 195, 204, 109 S.Ct. 2875, 2881, 106 L.Ed.2d 166 (1989). The recording of the statement and Corbitt's testimony support the conclusion of the trial court that defendant waived the presence of counsel. Accordingly, the court did not err when it denied the motion to suppress confession.
WRIT DENIED.
NOTES
[1] Judge Carl A. Guidry, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] While conducting the cross-examination of Corbitt, defense counsel replayed portions of the recording. After listening to this portion of the recording, Corbitt testified that his words on the recording were: "Not during this statement." (Emphasis added.) A transcript of the tape recording was not introduced into evidence but is included with the exhibits. According to the transcript, Corbitt said, "Not during the statement." Although Corbitt's exact language is unclear, this discrepancy has no effect on the outcome.