MOORE, J.
| Thomas Howard appeals his convictions on one count each of second degree battery and simple battery and his consecutive sentences of five years at hard labor and six months in parish jail. For the reasons expressed, we affirm.

Factual and Procedural Background

Howard and the first victim, 19-year-old Alyssa Balsamo, had dated for about 2½ years. They had broken up often, but Alyssa always took him back; however, about two weeks before the incident, Howard left her for another girl, and Alyssa was bitter about it.
At trial, Alyssa testified that on the night of May 20, 2009, she and two friends, Liz McEacharn and the second victim, Hannah Anderson, were together at The Library Lounge in Monroe. Alyssa was drinking and had taken half a Xanax, a popular anti-anxiety drug. At some point, the women decided to drive to a house in Swartz to visit someone named Trey; all agreed that they went on the strict understanding that Howard would not be there. Liz drove the trio up to Swartz.
When they pulled up to Trey’s house, they saw Howard’s truck parked there. The area was dark and the truck had heavily tinted windows, so Alyssa could not see inside it; she thought Howard was not in the truck but in the rear of the property, riding mud bikes. Angered at seeing *1041 his truck, she kicked its side panel. She then reared back for another kick.
Suddenly, Alyssa heard the truck door slam and, before she could move, Howard “pounced” on her and knocked her to the ground. She remembered hitting the ground and struggling with him, but she then|2lost consciousness.
Hannah confirmed that after the first kick, Howard leapt out of the truck, grabbed Alyssa in a chokehold, threw her down, and the two wrestled on the ground for a few moments. Hannah tried to intervene, but Howard turned on her, grabbing her by the hair and dragging her through the grass. He then returned to the unconscious Alyssa and threw loose tobacco on her.
The third woman, Liz, stayed out of the fray and picked up Alyssa’s shoes and cell phone. She did not, however, call anyone for help.
After the fracas ended, Howard phoned Alyssa’s mother, telling her to come get her daughter, who “just beat me up.” Alyssa’s parents promptly drove to Trey’s house to find their daughter lying “unresponsive” on the ground. Hannah and Liz were still there, but Howard had left. The Bálsamos drove Alyssa to St. Francis Medical Center North, where she finally came to. Alyssa testified that she suffered a concussion, a bad bump (“goose egg”) on the back of her head, bruises on her neck and abrasions on her arms.
Deputy Brandon Semmes of the Ouachi-ta Parish Sheriff’s Office (“OPSO”) was dispatched to the hospital, where Alyssa reported she had been in a fight with her ex-boyfriend. Dep. Semmes saw the knot on the back of her head and “significant” bruising on her neck and arms. He tried to phone Howard, but got no answer. OPSO Cpl. Hindman took photos of Alyssa’s injuries; she was later released.
Later that night, OPSO Dep. Michael Meredith went to Howard’s house in the Belle Meade area northeast of Monroe. He read Howard his | Miranda rights and placed him under arrest. Howard showed him a dent on his truck and said his girlfriend had kicked it in. Dep. Meredith, however, thought the shoeprint matched a pair of work boots in the bed of the truck. Confronted with this, Howard admitted, “Yeah, I just wanted to get her in trouble because I knew I was [in trouble].”
A few months after the incident, Alyssa and Howard reconciled; Mrs. Balsamo let him move into the family home, where Alyssa was still living. Mrs. Balsamo testified, however, that she evicted him about three months later, after he and Alyssa got into another fight.
In September 2009, OPSO Sgt. Charles Johns interviewed Alyssa about the incident in Swartz. Sgt. Johns testified that she tried to retract her statement, saying she had been drinking and taking Xanax when she gave it; she also told him to contact Liz McEacharn as a witness. He then talked to Liz, who gave a statement similar to Alyssa’s original version of events. At trial in July 2010, Alyssa testified that her retraction to Sgt. Johns was untrue; at the time, she and Howard had just “got back together” and she wanted to give him a second chance.
In July 2009, the state charged Howard by bill of information with one count of second degree battery against Alyssa and one count of simple battery, a misdemean- or, against Hannah.

Trial Proceedings

On July 21, 2010, four days before trial was to begin, the state filed a notice of intent to use evidence of other crimes under La. C.E. art. 404 B, specifically two incidents with a woman named Lora Wallace, in April and 14June 2008, “to show the *1042 Defendant’s violent propensities toward women while they are engaged in an intimate and/or domestic relationship with the Defendant.” Before trial began on July 25, the court held a Prieur hearing to determine whether to admit the 404 B evidence.
At the Prieur hearing, Assistant Chief Becky Crain of the Caldwell Parish Sheriffs Office testified that on April 14, 2008, Ms. Wallace came to the office to file a complaint against her boyfriend, Howard; she described an incident in Lucedale, Mississippi, the previous weekend. Dep. Crain observed a bruise on Ms. Wallace’s left eye and some bruising on one of her arms; she took photos. Dep. Crain told Ms. Wallace she had to go to authorities in Mississippi to file a complaint. Ms. Wallace testified that she and Howard were girlfriend and boyfriend, on and off, for about three years from 2007 to 2009; she had gone to Mississippi to visit him where he was working on a pipeline; when she was ready to leave, he did not want her to go; they argued, and it escalated into physical contact in which he hit her in the eye and held her down on the bed, while she bit and pinched him; after 45 minutes, he left in his truck, threatening to kill himself; she followed him awhile in her car, lost sight of him, and went back to his trailer; he returned some time later, and she finally left after he fell asleep. Ms. Wallace went to Caldwell Parish, talked to Dep. Crain, and then drove back to Mississippi; on the way, she saw Howard and Alyssa driving back to Louisiana together.
Despite this incident, Ms. Wallace continued her relationship with Howard. She was riding with him in June 2008 when another man either 15texted or phoned her; Howard saw this, got furious, grabbed her by the hair and smashed her head against the windshield several times; she stopped the car in the Bawcomville area of West Monroe, and he walked away. She did not report this incident to police, but as a result of it she finally broke up with him.
The court ruled that the state met its burden of proof under Art. 404 B and State v. Prieur to admit this evidence. The defense objected; the court directed counsel to fashion a limiting jury charge.
Immediately after the Prieur hearing, the case proceeded to trial on July 25-26, 2011. Before jury selection began, defense counsel asked for a “postponement” of trial because a character witness, Jeff Smith, who had once seen Alyssa “attack” Howard at a party, was in Singapore and unavailable to testify. Counsel added that she was not aware that the case was set for trial until the previous Wednesday, July 20. The state replied that the matter had been set for trial since May 3. The court denied the request for continuance.
A six-member jury was selected to try count one, second degree battery of Alyssa Balsamo, while the court simultaneously tried the misdemeanor count two, simple battery of Hannah Anderson. The state’s witnesses testified as outlined above. The jury also saw the photos of Alyssa taken by OPSO Dep. Hindman shortly after the incident of May 20, 2009, and the photos of Ms. Wallace taken by CPSO Dep. Crain on April 14, 2008. Before it rested, the state attempted to call Valerie Bowman, an expert in the different responses to domestic violence. The defense objected |(,that the state gave no notice that it wanted to call Ms. Bowman until the preceding day. Describing this as “in a nature of ambush,” the court excluded Ms. Bowman’s testimony.
The defense called Joshua Shannon, who was in Howard and Alyssa’s circle of friends. Shannon testified that Alyssa always tried to push Howard into things and goaded him a lot; he described an incident shortly before May 20, 2009, when Alyssa *1043 drove up to Howard and several friends, jumped out of her car, punched him in the face, chased him into his truck and begged him to hit her. The defense also recalled Hannah and Liz, asking them to explain why they failed to call authorities when they allegedly saw Howard thrashing Alyssa. Hannah was not sure she had her phone at the time, and things happened “so fast”; Liz stated that “it never crossed my mind to call 911.” Finally, the defense called Carol May, Howard’s current girlfriend and mother of his child. Carol testified that Howard had argued with her but never hit her; while she was pregnant, Alyssa made many harassing phone calls, including several urging her to get an abortion; and in November 2010, when she and Howard had temporarily broken- up, she went home to get the baby and found Alyssa had spent the night with Howard.
The six-member jury found Howard guilty as charged of the second degree battery of Alyssa; the court also found him guilty as charged of the simple battery of Hannah. At sentencing in October 2011, the court acknowledged that this was Howard’s first felony conviction but noted a serious history of criminal conduct both before and after the instant |7offenses. It imposed consecutive maximum sentences of five years at hard labor for the second degree battery and six months in jail for the simple battery. It also issued a Louisiana Uniform Abuse Prevention Order directing Howard to have no contact with Alyssa, either directly or indirectly, for life.
Howard now appeals, raising six assignments of error.[1]

Discussion: Other Crimes Evidence

By his first assignment of error, Howard urges the court erred in allowing the introduction of other crimes evidence under La. C.E. art. 404 B. He shows that State v. Prieur, 277 So.2d 126 (La.1973), permitted such evidence only “to show intent, knowledge or system,” and Art. 404 B, adopted in 1988, allows it more broadly for “proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, * * * or when it relates to conduct that constitutes an integral part” of the charged offense, but here the state went far beyond these bounds by seeking to show “the Defendant’s violent propensities toward women while they are engaged in an intimate and/or domestic relationship.” He argues that this violated the basic rule against using other crimes evidence merely to prove that the defendant is a bad person with a propensity to commit crimes, and that the 2008 incidents with Ms. Wallace cannot possibly be an integral part of the 2009 incident with Alyssa.
IsThe state responds that the incidents are extremely similar and have great probative value to prove Howard’s “modus operandi, plan and/or system of domestic abuse.” The state also submits that even if the evidence was improperly admitted, it did not affect the verdict and thus was harmless error. State v. Haddad, 99-1272 (La.2/9/00), 767 So.2d 682.
Courts may not admit evidence of other crimes to show the defendant as a man of bad character who has acted in conformity with his bad character. La. C.E. art. 404 B(l); State v. Rose, 2006-0402 (La.2/22/07), 949 So.2d 1243. Evidence of other crimes, wrongs or bad acts *1044 committed by the defendant is generally inadmissible because of the “substantial risk of grave prejudice to the defendant.” State v. Prieur, 277 So.2d at 128; State v. Rose, p. 12, 949 So.2d at 1243. However, the state may introduce such evidence if it establishes an independent and relevant reason such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. La. C.E. art. 404 B(l). The state must provide the defendant with notice and a hearing before trial if it intends to offer such evidence. State v. Prieur, 277 So.2d at 130. Even when other crimes evidence is offered for a purpose allowed by Art. 404 B(l), the evidence is not admissible unless it tends to prove a material fact at issue or to rebut a defendant’s defense. State v. Rose, supra; State v. Martin, 377 So.2d 259, 263 (La.1979). The state also bears the burden of proving that defendant committed the other crimes, wrongs or acts. State v. Galliano, 2002-2849, p. 2 (La.1/10/03), 839 So.2d 932, 933.
| ¡Although a defendant’s prior bad acts may be relevant and otherwise admissible under Art. 404 B, the court still must balance the probative value of the evidence against its prejudicial effects before it can be admitted. La. C.E. art. 403. Any in-culpatory evidence is “prejudicial” to a defendant, especially when it is probative to a high degree. State v. Germain, 433 So.2d 110, 118 (La.1983). “Prejudicial,” in this context, means that probative evidence of prior misconduct is excluded only when- it is unduly and unfairly prejudicial. Id.; Old Chief v. United States, 519 U.S. 172, 180, 117 S.Ct. 644, 650, 136 L.Ed.2d 574 (1997). The erroneous admission of other crimes evidence is subject to the harmless error rule. State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94; State v. Cooley, 47,087 (La.App. 2 Cir. 5/16/12), 92 So.3d 1095.
The state gave adequate (if rather belated) Prieur notice of its intent to use other crimes evidence and proved that Howard was the person who committed those bad acts against Ms. Wallace.
The key inquiry is whether the evidence was relevant to serve some independent purpose apart from showing merely that Howard was a bad person. The state’s Prieur notice referred to Howard’s “pattern or plan” and his “violent propensities toward women while they are engaged in an intimate and/or domestic relationship” with him.
In State v. Rose, supra, the supreme court explicitly approved the admission of the defendant’s acts of violence against (and killing of) his first wife, at the trial for the murder of his second wife. The court found the prior acts clearly expressed the vicious, deviant attitude the defendant held 110toward women with whom he had a romantic relationship, such that the crimes were “inextricably connected in the pattern” they exhibited. Id. at 16-17, 949 So.2d at 1245-1246. Although the precise issue in Rose was the identity of the murderer, and although the other crimes evidence loomed large because the state’s case was mainly circumstantial, the court fully approved admission of the other crimes evidence to prove “a specific pattern of violent and obsessive behavior [which] earmarked the crimes as the work of one man[.]” Id. at 17, 949 So.2d at 1246.
Similarly, the evidence of Howard’s conduct with Ms. Wallace was relevant to show his deviant attitude toward women he was dating. It also negated any claim that he intended only to frighten, not injure, Alyssa. On these facts, the court did not abuse its discretion in admitting the other crimes evidence. Consequently, this assignment of error lacks merit.

*1045
Disclosure of Brady Material

By his second and third assignments of error, Howard urges the state failed in its obligation to tender to the defense exculpatory evidence, specifically inconsistent statements by the victim and other key witnesses. He filed a motion for discovery and inspection on June 11, 2009; the state responded on August 11, 2009, that it had “no evidence favorable to the defense”; the state never supplemented its response; however, five months after trial, one of Howard’s family members requested and received, by public records request, a copy of the supplemental police report by Sgt. Johns; this report, dated September 9, 2009, stated that Alyssa tried to retract her initial version of events and that Hannah lied about the incident. ^Howard contends that this was exculpatory material that the state was obligated to disclose to the defense under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and failure to disclose it was reversible error. Kyles v. Whitley, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995); State v. Marshall, 94-0461 (La.9/5/95), 660 So.2d 819.
The state concedes that it failed to supplement its discovery response or disclose Sgt. Johns’s report. However, it referred to the contents of the report in opening statement at trial; the defense did not raise a Brady objection; and Alyssa was thoroughly examined and cross-examined about her attempt to retract her initial complaint. The state argues that on this record, timely disclosure of the supplemental report would not have created a reasonable probability of a different outcome. United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); State v. Myers, 2004-1219 (La.App. 4 Cir. 11/3/04), 888 So.2d 1002, writ denied, 2004-2475 (La.2/4/05), 893 So.2d 85. It concludes that nondisclosure did not create reversible error.
Because the state filed no supplemental discovery response, and because Howard filed no motion for new trial, the police report in question is not part of the appellate record. This court cannot consider references to evidence that is not part of the appellate record. State v. Scott, 38,901 (La.App. 2 Cir. 9/22/04), 882 So.2d 1185.
The nondisclosure or late disclosure of exculpatory information is a violation of the defendant’s rights that can merit reversal of a conviction. Brady v. Maryland, supra; State v. Kemp, 2000-2228 (La.10/15/02), 828 So.2d 540. Sgt. Johns’s supplemental report, assuming that its contents are 112as described in the briefs, would be discoverable; the victim’s recantation of her story is discoverable impeachment evidence. Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); State v. Bailey, 367 So.2d 368 (La.1979); La. C. Cr. P. art. 718. Although the report was not generated when the state first responded to discovery, the state had a continuing duty to disclose evidence that is or may be subject to discovery. La. C. Cr. P. art. 729.3; State v. Strickland, 398 So.2d 1062 (La.1981); State v. Bobo, 46,225 (La.App. 2 Cir. 6/8/11), 77 So.3d 1, writ denied, 2011-1524 (La.12/16/11), 76 So.3d 1202. An ir regularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. La. C. Cr. P. art. 841 A; State v. Roussel, 381 So.2d 796 (La.1980).
The record supports the state’s position that the defense neither objected nor requested a recess when the prosecutor referred, in opening statement, to Alyssa’s attempted recantation, or asked her about it on direct examination. The *1046 failure to object amounts to a waiver of the claim. La. C. Cr. P. art. 841 A; State v. Roussel, supra. Although this court has grave concerns about the state’s failure to disclose material that is clearly discoverable under Brady and Giglio, we can assume that defense counsel was at least superficially aware of it, as she cross-examined. Alyssa about her wavering story. We are also constrained by the fact that Sgt. Johns’s supplemental report is not part of the record. These are issues which Howard might wish to assert by application for post conviction relief in a proceeding where a full evidentiary hearing can be held. La. C. Cr. P. art. 930; State ex rel. Bailey v. City of West Monroe, 418 So.2d 570 (La.1982). | is0n this record, however, the issue is not adequately preserved and the state’s conduct is not patently prejudicial under Bagley. This assignment does not present reversible error.

Motion for Continuance

By his fourth assignment of error, Howard urges the court erred in denying a continuance to allow the defense to pursue witnesses. Counsel was unable to subpoena Jeff Smith, a person who witnessed the incident, knew both Howard and Alyssa and had information about their relationship; this testimony, he argues, was mitigating evidence which may have resulted in a responsive verdict or a lesser sentence, and excluding it denied his right to counsel. State v. Knight, 611 So.2d 1381 (La.1993). Further, on the morning of trial counsel told the court she had five cases on the priority docket and had prepared for a child sex case instead of this one; according to Howard, this proves that she had inadequate opportunity to investigate the case.
The state responds that the court did not abuse its wide discretion in ruling on the continuance. La. C. Cr. P. art. 712; State v. Martin, 93-0285 (La.10/17/94), 645 So.2d 190. It cites the prosecutor’s statement at trial that three weeks before the trial date, the D.A.’s office sent counsel a copy of the priority list (the list itself, however, is not in the record), setting Howard’s trial as No. 2; the supreme court has approved the three-week notice afforded by the Fourth JDC’s priority list. State v. Chapman, 2010-1510 (La.10/29/10), 46 So.3d 660. Finally, Howard’s case had been on the trial docket for over a year, giving counsel ample time to interview Mr. |14Smith. The state concludes there was no error and no prejudice.
Because trial had already started, the request was technically for a recess rather than a continuance. La. C. Cr. P. art. 708; State v. Warren, 437 So.2d 836 (La.1983). Nonetheless, a motion for recess is evaluated by the same criteria as a motion for continuance. State v. Warren, supra. Under La. C. Cr. P. art. 709 A, a motion for continuance based upon the absence of a witness shall state all of the following:
(1) Facts to which the absent witness is expected to testify, showing the materiality of the testimony and the necessity for the presence of the witness at the trial.
(2) Facts and circumstances showing a probability that the witness will be available at the time to which the trial is deferred.
(3) Facts showing due diligence used in an effort to procure attendance of the witness.
The decision to grant a recess is placed in the trial court’s discretion. State v. Telford, 384 So.2d 347 (La.1980); State v. West, 617 So.2d 1384 (La.App. 2 Cir.1993). The trial court’s decision will not be reversed absent an abuse of that discretion. State v. Gordy, 380 So.2d 1347 *1047 (La.1980); State v. Charles, 350 So.2d 595 (La.1977).
This record shows no abuse of discretion in denying the recess. Counsel argued only that Mr. Smith would be a general character witness who was also present when the incident occurred; she did not argue that he would contradict the eyewitnesses or provide any more evidence of Howard’s peaceful disposition than the other defense witnesses, Joshua Shannon and Carol Ann May. Counsel also did not show when Mr. Smith was likely to be back from Singapore, or explain why she did not subpoena |1Khim when she first learned of him. On this showing we cannot find any abuse of discretion. To the extent that this assignment might suggest ineffective assistance of counsel, that issue should be deferred to post conviction relief under La. C. Cr. P. art. 980. This assignment lacks merit.

Excessive Sentence

By his fifth and sixth assignments of error, Howard urges the court erred in imposing excessive and consecutive sentences. He concedes that counsel filed no motion to reconsider, but suggests that the court overlooked several mitigating factors. He also contends that maximum sentences on both counts are excessive for a first-time felony offender and the court failed to rebut the statutory presumption of concurrent sentences for offenses arising out of the same act or transaction, La. C. Cr. P. art. 883.
The state responds that Howard’s significant misdemeanor record, involving physical violence toward women and the use of alcohol, fully support the maximum and consecutive sentences.
Ordinarily, appellate review of sentences for excessiveness is a two-step process, the first being an analysis of the district court’s compliance with the sentencing guidelines of La. C. Cr. P. art. 894.1. However, when the defendant files no motion to reconsider sentence, appellate review is limited to the second step, an analysis of the sentence for constitutional excessiveness. State v. Mims, 619 So.2d 1059 (La.1993); State v. Williams, 45,755 (La.App. 2 Cir. 11/3/10), 54 So.3d 1129, writs denied, 2010-2682, -2706 (La.4/25/11), 62 So.3d 82, 89. Even though the issue is not properly preserved, we would note parenthetically that the district court [ ^adequately complied with the guidelines.
A sentence violates La. Const. Art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless imposition of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Lobato, 603 So.2d 739 (La.1992). A sentence is deemed grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice or makes no reasonable contribution to acceptable penal goals. State v. Guzman, 99-1753 (La.5/16/00), 769 So.2d 1158. Normally, sentences at or near the maximum are reserved for the worst offenders and the worst offenses. State v. Cozzetto, 2007-2031 (La.2/15/08), 974 So.2d 665. Nevertheless, the sentencing court has wide discretion in imposing a sentence ■within statutory limits and such a sentence will not be set aside as excessive in the absence of manifest abuse of that discretion. State v. Williams, 2003-3514 (La.12/13/04), 893 So.2d 7. The maximum sentence for second degree battery is a fine of $2,000, five years at hard labor, or both. La. R.S. 14:34.1. The maximum sentence for simple battery is a fine of $1,000, six months in jail, or both. La. R.S. 14:35.
*1048 When two or more convictions arise from the same act or transaction, or constitute parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. La. C. Cr. P. art. 883. Concurrent sentences arising out of a single course of conduct are not mandatory. State v. Derry, 516 So.2d 1284 (La.App. 2 Cir.1987), writ denied, 521 So.2d 1168 (1988). It is within the court’s discretion to make sentences consecutive rather than concurrent. State v. Johnson, 42,323 (La.App. 2 Cir. 8/15/07), 962 So.2d 1126. A judgment directing that sentences arising from a single course of conduct be served consecutively requires particular justification from the evidence or record. When consecutive sentences are imposed, the court shall state the factors considered and its reasons for the consecutive terms. State v. Johnson, supra. Among the factors to be considered are the defendant’s criminal history, the gravity or dangerousness of the offense, the viciousness of the crimes, the harm done to the victims, whether the defendant poses an unusual risk of danger to the public, the potential for the defendant’s rehabilitation, and whether the defendant has received a benefit from a plea bargain. State v. Johnson, supra; State v. Barnett, 46,303 (La.App. 2 Cir. 5/18/11), 70 So.3d 1, writ denied, 2011-1612 (La.4/13/12), 85 So.3d 1239.
The district court aptly noted that prior to the instant offenses, Howard had one arrest for DWI, with prosecution declined; an arrest and conviction for underage DUI and improper equipment on a vehicle; an arrest for simple battery arising from pouring a drink on a woman at a convenience store, with the charge dismissed; and an arrest for simple criminal damage to property, still pending on the date of sentencing. After the instant offenses, in September 2009 Howard had a charge of domestic abuse battery and violation of a protective order arising from hitting and choking Alyssa; in February 2010, an arrest oh two counts of simple battery for hitting, choking and threaten-ing to kill Alyssa; in December 2010, an | ,8arrest for careless operation and other minor offenses, for which he was placed on pretrial diversion; and in July 2011, shortly before this trial, he went to Alyssa’s place of work, again in violation of the protective order, trying to speak to her. Although the instant offense was Howard’s first felony conviction, he has a significant criminal history involving abuse of alcohol and of women; his persistent harassment of Alyssa makes him an unusual risk to the public. On this record, we cannot say the district court abused its discretion in meting out the maximum sentences for both offenses. Moreover, the consecutive sentences totaling 5½ years, though harsh, are supported by particular justification and do not shock the sense of justice. This assignment of error lacks merit.

Conclusion

This court has reviewed the entire record and found nothing it considers to be error patent. La. C. Cr. P. art. 920(2). For the reasons expressed, the convictions and sentences are affirmed.
AFFIRMED.

. There is no appeal from a misdemeanor conviction. La. C. Cr. P. art. 912.1 B. However, this court will review the simple battery conviction under its general supervisory jurisdiction. La. C. Cr. P. art. 912.1 C; State v. Gill, 42,938 (La.App. 2 Cir. 1/9/08), 974 So.2d 212.