Judgment rendered July 17, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,583-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

JERMON JAMES                                Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 386,860

Honorable Donald E. Hathaway Jr., Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Douglas Lee Harville

JAMES EDWARD STEWART, SR.            Counsel for Appellee
District Attorney

MARGARET E. RICHIE GASKINS
COURTNEY RAY
Assistant District Attorneys

* * * * *

Before STEPHENS, HUNTER, and MARCOTTE, JJ.

HUNTER, J., concurring in part and dissenting in part.

MARCOTTE, J.

This criminal appeal arises from the First Judicial District Court, Parish of Caddo, the Honorable Donald E. Hathaway, Jr. presiding. Defendant, Jermon James, was convicted of three counts of armed robbery and sentenced to 12.5 years at hard labor without benefits for each count, to be served consecutively. James now appeals his convictions and sentences.

## FACTS AND PROCEDURAL HISTORY

On January 5, 2023, James was charged by amended bill of information with three counts of armed robbery, in violation of La. R.S. 14:64. The crimes occurred on or about December 4-5, 2019, in Shreveport, Louisiana. The amended bill alleged that James was armed with a firearm when he committed the crimes. Count One stated that James took a thing of value belonging to Chasety Clark at a Subway restaurant located at 1939 Jewella Ave. Count Two stated that James took a thing of value belonging to Labrina Polk at a Little Caeser's restaurant located at 7007 Pines Road. Count Three stated that James took a thing of value belonging to Tamara Canterberry at a Valero gas station located at 8800 Jewella Ave. James pled not guilty to all counts.

On January 5, 2023, James filed a motion to suppress a statement he made to law enforcement which he claimed occurred under circumstances that were unduly suggestive, nonvoluntary, and when he was under duress. James claimed that on December 6, 2019, Detectives Belanger and Smith of the Shreveport Police Department ("SPD") contacted him at Ochsner-LSU Hospital in Shreveport, Louisiana, and requested that he give a statement without the presence and advice of counsel. Defendant stated that during the interrogation he requested a court-appointed attorney, but the SPD detectives

continued to interrogate him without providing him with counsel, in violation of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

On the same day, a free and voluntary hearing and a hearing on the motion to suppress were held. When SPD officers took his statement, James was 17 years old and a patient at the hospital, being treated for a dog bite from a police dog. The interrogation lasted approximately 56 minutes. The following exchange occurred between the trial court, defense counsel, Elizabeth Gibson ("Ms. Gibson" or "Atty. Gibson"), and the assistant district attorney, Courtney Ray ("Ms. Ray" or "Atty. Ray"):

THE COURT: In the motion to suppress statement, you say during the interrogation of the defendant, the defendant requested a court-appointed attorney. I never heard that.

MS. GIBSON: 22 minutes and … 40 seconds into the interview he requested a court-appointed attorney.

….

MS. RAY: And what I … wrote as his statement was, I need a court-appointed attorney or my mama. It was –

MS. GIBSON: But he requested a court-appointed attorney.

MS. RAY: He said the word attorney, but that doesn't make it a request.

MS. GIBSON: I disagree.

MS. RAY: You need a court-appointed attorney is not the same thing as saying I want an attorney to talk to you.

MS. GIBSON: I would like to play that portion of it. And he was in the hospital and he was only 17 years old.

MS. RAY: But he was an adult under Louisiana law at that time.

2

THE COURT: The request for an attorney must be clear and unambiguous. I'm going to have to go upstairs and listen to it. I did not hear that.

The trial court then recessed the proceedings and listened to the recording of defendant's statement in chambers. The recording was not admitted into the record and no testimony about the statement was offered. The trial court said that defendant declared in his statement, "I either need a court-appointed lawyer or I need to talk to my mama." The trial court noted that the detectives then continued to interrogate James. In argument, Atty. Gibson said that throughout the interview and after James said he needed a lawyer, the police continuously told him that he was lying and he would feel better if he would "come clean and get it off his chest." Atty. Gibson also said that James stated in the interview that he was in a lot of pain.

Atty. Ray argued that James was suffering from a dog bite, but he was being treated at the time and the "medical situation" was "under control before he was interrogated." Atty. Ray contended that the officers' statements were not unduly coercive and he was not forced or threatened to make a statement. The trial court then said:

Dealing with the free and voluntary nature of the statement, I listened to the statement. I even went back upstairs and listened to parts of the statement again just recently. Mr. James was read his *Miranda* rights and he agreed to give a statement.

While giving the statement he did not sound to be under the influence and his answers were coherent. He understood the questions and made his responses. He stated that he was not on pain medications and did not recall being given pain medications. He appeared to be, in my opinion, in his right mind.

He did not sound to be under duress and he was not coerced. There were no promises made to him and no threats. So, I'm finding that the statement was given freely and voluntarily and it will be admissible at trial.

Now … as far as the motion to suppress goes concerning the indication of his right to counsel, in [*State v. Evans*, 581 So. 2d 372 (La. App. 4 Cir. 1991), *writ denied*, 588 So. 2d 112 (La. 1991)], the [defendant] said he understood his rights and wanted to cooperate, but he would not sign a waiver of rights form without consulting an attorney. This was not considered a general request for counsel and, therefore, the police could continue to question him.

In [*State v. Kelly*, 95-1663 (La. App. 3 Cir. 5/8/96), 677 So. 2d 495], the question such as may I call a lawyer, can I call a lawyer, was insufficient to invoke the *Miranda* rights. In another case, during a search of a defendant's home for illegal drugs he was given the *Miranda* warnings and asked if an attorney could be present at the immediate questioning. The officer said, no, not right then, and the defendant said he wanted to go forward with the statement anyway and that was upheld as well. That's going to be [*State v. Nixon*, 96-0134 (La. App. 1 Cir. 12/20/96), 687 So. 2d 114, *writ denied*, 97-0172 (La. 3/7/97), 690 So. 2d 22].

So, the motion to suppress statement, in my opinion, I either need a lawyer or to talk to my mama is not an unequivocal request for an attorney and the motion to suppress the statement will be denied.

Defense counsel objected to the court's ruling.

On January 13, 2023, a trial was held. All three victims testified at trial that they were robbed at gunpoint at the respective businesses where they worked. The robber pointed a gun at each of them, demanded the money from the register and/or the safe, got the money, and then fled the scene. Each of the victims testified that they did not know the person who committed the robberies. Tamara Canterberry testified that the robber told her to "pop open the safe" and "pop open the register." Each of the robberies was captured on video; those video recordings were entered into evidence and played for the jury.

Each of the videos showed the robber wearing grey Adidas pants with black stripes running down the side, a black hooded sweatshirt, and grey and

4

black high-top shoes. The robber had a black and silver handgun and a blue and silver Under Armour backpack. The suspect's face can be seen in each of the videos.

Detective Donald Belanger, Jr. ("Det. Belanger") stated that he and Detective Melvin Smith ("Det. Smith") interviewed James at the hospital. James had been bitten by a dog and was being treated. Det. Belanger spoke with hospital staff and verified that James was not given pain medication. He *Mirandized* James, but James was unable to sign his waiver of rights form. However, James gave a verbal indication of his willingness to speak. Det. Belanger stated that James initially claimed he had no knowledge of the robberies, but eventually admitted that he committed all three robberies. James' recorded statement was not admitted or played for the jury. Det. Belanger identified James in court and testified that the person he interviewed at the hospital, James, was the same person that appeared in the videos of the robberies.

On cross-examination, Det. Belanger was asked if James expressed to him at the time of his interview that he was in "extreme pain" from his wound. Det. Belanger said that he did not remember James saying that, but said that he was "not feeling great." Det. Belanger said that James claimed in his interview that he was responsible for guarding the narcotics of a person named "D.D." James told Det. Belanger that, while D.D. was on an errand, his residence was robbed and the narcotics stolen. James said that D.D. blamed him for the theft and forced him to commit the instant robberies in order to pay D.D. back.

Det. Belanger agreed that James told him that on the two nights that the robberies occurred, D.D. picked him up, provided him with clothes to

wear, and drove him to the three locations that were robbed. James said that D.D. rode in the back seat with the gun and an unknown female drove the vehicle. James informed Det. Belanger that D.D. instructed him to enter the businesses and yell, "Pop the register, pop the safe." Defense counsel attempted to question Det. Belanger about James requesting an attorney during his interrogation, but the trial court did not allow that testimony.

On redirect, Det. Belanger stated that SPD was unable to find evidence corroborating James' claims about anyone named D.D. Det. Smith testified to the same facts as Det. Belanger, but added that James never said he was in pain while being interviewed at the hospital.

Sebastian Edwards ("Edwards") testified that he had known James since 2016 and interacted with him regularly. He identified James in each of the three videos of the robberies. The state rested. James elected not to testify in his own defense. The defense rested. The jury returned a verdict of guilty as charged for each count. The jury was polled. The trial court ordered that a presentence investigation report ("PSI") be prepared.

On April 4, 2023, James was sentenced. The trial court found that there was an undue risk that James would commit another crime, he needed custodial treatment, and a lesser sentence would deprecate the seriousness of his crimes. The trial court stated that it considered the factors found in La. C. Cr. P. art. 894.1 and found the following aggravating factors relevant: (1) that he knowingly created a risk of death or great bodily harm to more than one person; (2) that James used threats of or actual violence in the commission of the offenses; (3) that he used a dangerous weapon in the commission of his offenses; and (4) that he used a firearm while committing the offenses which had as an element the use, attempted use, or threatened

6

use of physical force against the person or property of another and which by its very nature involved a substantial risk that physical force was used in the course of committing the offenses.

The trial court noted that James was convicted of armed robbery in Bossier Parish and sentenced to 12.5 years at hard labor for that offense, which occurred at the same time as the instant offenses. The trial court noted that he was also convicted of possession of controlled dangerous substances in Texas in 2019. The trial court also considered the mitigating factors found in La. C. Cr. P. art. 894.1. He specifically found that the following factors did not apply: (1) James' criminal conduct neither caused nor threatened serious harm; (2) he did not contemplate that his criminal conduct would cause or threaten serious harm; and (3) he acted under strong provocation.

The trial court mentioned some of the information found in James' PSI. The court said that he was 20 years old and dropped out of high school after the 10th grade. He said that he was never employed, but stated that he worked for the Louisiana State Fair for a time. He lived with his mother, sister, and brothers. His father was not present in his life. The trial court sentenced James to 12.5 years at hard labor without benefits for each count, with each sentence to be served consecutively to each other and any other sentence he was required to serve. He was given credit for time served. James was informed of his appellate and post-conviction relief time delays.

On April 12, 2023, James filed a motion to reconsider sentence arguing that his sentence was excessive considering the circumstances of the offense and the failure of the trial court to adequately consider the mitigating

7

factors and to state the grounds for the imposition of the sentence. The trial court denied James' motion to reconsider. James now appeals.

## DISCUSSION

*Free and Voluntary Statement and Request for Counsel*

First, appellant argues that his recorded statement was not voluntarily made, his request for a lawyer was not honored, and the state failed to meet its burden of proving the admissibility of his statement. James argues that he was 17 years old and in the hospital at the time he gave his statement and his brain had not fully developed due to his age.

He contends that there was no testimony at the motion to suppress hearing, only argument, and his recorded statement was not entered into evidence at the hearing or at trial. James argues that the trial court's ruling on his motion to suppress was based on its review of James' recorded statement, in which he asked for an attorney approximately 23 minutes into his 56-minute interview. James asserts that this court cannot conduct a proper appellate review of the trial court's ruling without hearing his recorded statement.

Appellant states that this court should defer to the trial court's credibility determinations based on live testimony, but there was no testimony in support of the court's ruling. James argues that the trial court, when reviewing the recorded statement, was able to hear the tone and demeanor of the participants and was able to consider the volume, pace, and strength of his voice, his pattern of speech, and the appropriateness of his responses. James contends that this court cannot review any of those factors and cannot consider the trial court's ruling against the weight of the

8

evidence. Appellant asks that this court reverse the trial court's ruling and suppress his recorded statement and vacate his convictions.

Appellee argues that James did not contemporaneously object to the state's failure to introduce his recorded statement into evidence or present live witness testimony at the motion to suppress hearing, which precludes James from raising that issue on appeal. The state contends that the record is sufficient for review because this court may consider the entire record, including any trial testimony when reviewing a trial court's ruling on a motion to suppress.

Appellee states that if this court determines that it cannot properly review the trial court's ruling on the motion to suppress without listening to the recorded statement, the proper remedy is to supplement the appellate record, claiming that the recorded statement was tacitly admitted by the trial court. The state asks that this court affirm the trial court's ruling on James' motion to suppress and his conviction.

In *Miranda v. Arizona, supra*, the United States Supreme Court held the prosecution may not introduce at trial a statement stemming from custodial interrogation of a defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. *Miranda* applies when a person is questioned (*i.e.*, interrogated) by law enforcement while in police custody (or otherwise deprived of his freedom of action in any significant way). *Id.*

A confession is involuntary, and therefore inadmissible, if it is obtained by "techniques and methods offensive to due process, or under circumstances in which the suspect clearly had no opportunity to exercise 'a free and unconstrained will.'" *Oregon v. Elstad,* 470 U.S. 298, 304, 105 S.

9

Ct. 1285, 84 L. Ed. 2d 222 (1985), *citing*, *Haynes v. Washington,* 373 U.S. 503, 514-15, 83 S. Ct. 1336, 10 L. Ed. 2d 513 (1963).

As a general matter, before inculpatory statements may be admitted into evidence, the state has the burden of affirmatively showing they were made freely and voluntarily and were not made under the influence of fear, duress, intimidation, menace, threats, inducements or promises.  La. R.S. 15:451; La. C. Cr. P. art. 703(D); *State v. Holliday*, 17-01921 (La. 1/29/20), 340 So. 3d 648, *cert. denied*, 141 S. Ct. 1271, 209 L. Ed. 2d 10 (2021).  No person under arrest shall be subjected to any treatment designed by effect on body or mind to compel a confession of crime.  La. R.S. 15:542.

The question of voluntariness of a confession, including a determination of the defendant's state of mind, is determined on a case-by-case basis, under a totality of the circumstances standard.  *State v. Smith*, 55,314 (La. App. 2 Cir. 11/15/23), 374 So. 3d 331, *writ denied*, 23-01663 (La. 5/7/24), __ So. 3d __, 2024 WL 2003142.  One who has suffered physical harm can still be competent to give a free and voluntary confession. *State v. Smith*, 409 So. 2d 271 (La. 1982).  James was considered an adult at the time of his offenses and interrogation under La. Ch. C. art. 804.

A trial court's finding as to the free and voluntary nature of a statement carries great weight and will not be disturbed unless not supported by the evidence.  *State v. Benoit,* 440 So. 2d 129 (La. 1983); *State v. Grimsley*, 55,261 (La. App. 2 Cir. 9/27/23), 372 So. 3d 378.  Credibility determinations lie within the sound discretion of the trial court and its rulings will not be disturbed unless clearly contrary to the evidence.  *Id.*

The inquiry in cases where the defendant claims he invoked his right to counsel is whether the statement was clear and unambiguous under the

circumstances so as to put a reasonable police officer on notice that defendant was invoking his right to counsel during a custodial interrogation. *Edwards v. Arizona,* 451 U.S. 477, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981); *State v. Payne*, 01-3196 (La. 12/4/02), 833 So. 2d 927; *State v. Howell*, 55,070 (La. App. 2 Cir. 6/28/23), 366 So. 3d 1271, *writ denied*, 23-01054 (La. 3/5/24), 379 So. 3d 1271.

In *Davis v. United States*, 512 U.S. 452, 114 S. Ct. 2350, 129 L. Ed. 2d 362 (1994), the suspect's remark to Naval Investigative Service agents, "Maybe I should talk to a lawyer," was not a request for counsel. Therefore, the agents were not required to stop questioning the suspect, though it was entirely proper for them to clarify whether he in fact wanted lawyer. In *Davis*, the Supreme Court stated:

> Invocation of the *Miranda* right to counsel "requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of attorney." *McNeil v. Wisconsin*, [501 U.S. 171, 178; 111 S. Ct. 2204, 115 L. Ed. 2d 158 (1991)]. But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, our precedents do not require the cessation of questioning. See *ibid.* ("[T]he likelihood that a suspect would wish counsel to be present is not the test for applicability of *Edwards*"); *Edwards v. Arizona, supra,* 451 U.S. at 485, 101 S. Ct. at 1885 (impermissible for authorities "to re-interrogate an accused in custody if he has clearly asserted his right to counsel").
>
> Rather, the suspect must unambiguously request counsel.

*Davis v. United States*, 512 U.S. at 459.

On the trial of a motion to suppress, the burden of proof is on the defendant to prove the ground of his motion, except that the state shall have the burden of proving the admissibility of a purported confession or statement by the defendant or of any evidence seized without a warrant. La.

C. Cr. P. art. 703(D). Great weight is given to the trial court's ruling on a motion to suppress about the finding of facts because it had the opportunity to observe the witnesses and weigh the credibility of their testimony. *State v. Bates*, 51,890 (La. App. 2 Cir. 2/28/18), 246 So. 3d 672. Accordingly, this court reviews the district court's ruling on a motion to suppress under the manifest error standard for factual determinations, while applying a *de novo* review to its findings of law. *Id.*

According to the transcript from the free and voluntary/motion to suppress hearing, neither the state nor defense counsel requested that the recording of James' confession be admitted or stipulated to its admission, and the recording was not admitted at trial. Dets. Belanger and Smith provided limited testimony about whether James' confession was free and voluntary. They each testified that they determined that James was not on pain medication while being treated at the hospital, did not expressly state that he was in pain, and that he was able to verbally waive his *Miranda* rights.

However, there was no testimony about whether James was under the influence of fear, duress, intimidation, menace, threats, inducements or promises as required by La. R.S. 15:451. Some argument was made at the hearing regarding those issues and the parties and the trial court made references to the recording of James' statement, but this court cannot consider references to evidence that is not part of the appellate record. *See State v. Howard*, 47,495 (La. App. 2 Cir. 11/14/12), 106 So. 3d 1038. The burden was on the state to prove that James' statement was freely and voluntarily given and defense counsel had the burden of proving that he unambiguously invoked his right to counsel. The trial court listened to his

12

confession in chambers, and argument about the transcript appears on the record, but this court cannot determine whether the trial court erred in finding that James' confession was freely and voluntarily given or if he invoked his right to counsel because this court cannot listen to the recording of his confession. On the record presented to this court, we cannot determine if James' confession should have been suppressed.

The state argues that the audio recording of James' custodial interview was tacitly admitted, and both parties request that this court order that the record be supplemented with the recording of the interrogation. We find it unnecessary to determine whether the record was tacitly admitted or remand the case to the trial court to determine if the record should be supplemented, because the erroneous admission of a confession or inculpatory statement is subject to harmless error analysis, even if the statement is made involuntarily or after the proper invocation of counsel. *State v. Brown*, 16-0998 (La. 1/28/22) 347 So. 3d 745, *cert. denied*, __ U.S. __, 143 S. Ct. 886, 215 L. Ed. 2d 404 (2023); *State v. Montejo*, 06-1807 (La. 5/11/10), 40 So. 3d 952. An error is harmless beyond a reasonable doubt if it is unimportant in relation to the whole, and the verdict rendered is surely unattributable to the error. *Arizona v. Fulminante*, 499 U.S. 279, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991); *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967); *State v. Brown, supra*.

We find that any error in failing to suppress James' statement was harmless beyond a reasonable doubt. Video recordings of each of the robberies were admitted at trial, and the suspect's face can be seen in each of the recordings. The suspect wore identical clothing in each of the robberies and used the same handgun and backpack. In each recording the suspect

13

enters the place of business holding the handgun in one hand and an open backpack in the other. Edwards, who was familiar with defendant and had regular contact with him, identified him as the suspect in each of the videos. The evidence, even without James' statement, supports his conviction beyond a reasonable doubt. This assignment of error lacks merit and James' conviction is affirmed.

*Excessive Sentence*

In his next assignment of error, appellant argues that the consecutive nature of his 12.5-year sentences is excessive. James asserts that he will be in his 60s before he is released from prison. He states that his three robberies occurred over less than two days. He also points out that he was 17 years old at the time of the offenses, no shots were fired during the commission of the offenses, and the victims sustained no physical injuries.

Appellant claims that his excessive sentences violate his constitutional rights because they serve no purpose and are merely punitive. James acknowledges the severe psychological harm suffered by the victims of the robberies. He states that, given his youth, he could respond positively to treatment and educational programs while incarcerated and could be a productive member of society upon release. He asks that this court reverse the consecutive nature of his sentences and order that they be served concurrently.

Appellee contends that the trial court ordering James to serve his sentences consecutively was appropriate. The stated argues that, although the offenses were tried together for the purposes of judicial efficiency, the offenses were not part of the same act or transaction. The state maintains that the robberies occurred at different locations over the course of two days

14

and involved separate victims.  The state argues that even if the armed robberies were part of a single transaction or occurrence, concurrent sentences arising out of a single course of conduct are not mandatory, but are within a trial court's discretion.

The state maintains that the trial court properly considered the factors found in La. C. Cr. P. art. 894.1 and that James' sentences are at the lower end of the legal range for armed robbery.  The state points out that James held three different women at gunpoint at their workplaces and stole money from their employers.  All three victims testified at trial about how terrified they were due to James' actions.  After committing the robberies, James posted several photographs to social media, showing him holding a gun and large amounts of cash.  The state asks that this court affirm James' sentences.

An excessive sentence claim is reviewed by examining whether the trial court adequately considered the guidelines established in La. C. Cr. P. art. 894.1, and whether the sentence is constitutionally excessive.  *State v. Dowles*, 54,483 (La. App. 2 Cir. 5/25/22), 339 So. 3d 749; *State v. Vanhorn*, 52,583 (La. App. 2 Cir. 4/10/19), 268 So. 3d 357, *writ denied*, 19-00745 (La. 11/19/19), 282 So. 3d 1065.  First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1.  The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions.  The trial court is not required to list every aggravating or mitigating circumstance so long as the record reflects that it adequately considered the guidelines of the article.  *State v. Smith*, 433 So. 2d 688 (La. 1983); *State v. Dowles, supra.*  The important elements which should be considered are the defendant's

personal history (age, family ties, marital status, health, and employment record), prior criminal record, seriousness of offense, and the likelihood of rehabilitation. *State v. Jones*, 398 So. 2d 1049 (La. 1981); *State v. Dowles, supra*. There is no requirement that specific matters be given any particular weight at sentencing. *Id*.

Second, the court must determine whether the sentence is constitutionally excessive. *Id.* Constitutional review turns upon whether the sentence is illegal, grossly disproportionate to the severity of the offense, or shocking to the sense of justice. A sentence violates La. Const. art. I, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than the purposeless infliction of pain and suffering. A sentence is grossly disproportionate if, when the crime and punishment are viewed in light of the harm to society, it shocks the sense of justice. *Id.*; *State v. Dowles, supra*.

The trial court has wide discretion in the imposition of sentences within the statutory limits, and sentences should not be set aside as excessive in the absence of manifest abuse of discretion. *State v. Vanhorn, supra*. A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing. *State v. Dowles, supra*. Absent specific authority, it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence. *Vanhorn, supra.*

In cases involving multiple offenses and sentences, the trial court has limited discretion to order that the multiple sentences are to be served concurrently or consecutively. *State v. Dunams*, 55,443 (La. App. 2 Cir. 1/10/24), 379 So. 3d 251; *State v. Dale*, 53,736 (La. App. 2 Cir. 1/13/21),

16

309 So. 3d 1031. When two or more convictions arise from the same act or transaction, or constitute parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. La. C. Cr. P. art. 883. Concurrent sentences arising out of a single course of conduct are not mandatory, and consecutive sentences under those circumstances are not necessarily excessive. *State v. Dunams*, *supra*; *State v. Hebert*, 50,163 (La. App. 2 Cir. 11/18/15), 181 So. 3d 795. It is within the court's discretion to make sentences consecutive rather than concurrent. *State v. Dunams*, *supra*; *State v. Robinson*, 49,677 (La. App. 2 Cir. 4/15/15), 163 So. 3d 829, *writ denied*, 15-0924 (La. 4/15/16), 191 So. 3d 1034.

When consecutive sentences are imposed, the court shall state the factors considered and its reasons for the consecutive terms. Among the factors to be considered are the defendant's criminal history, the gravity or dangerousness of the offense, the viciousness of the crimes, the harm done to the victims, whether the defendant constitutes an unusual risk of danger to the public, the potential for defendant's rehabilitation, and whether the defendant has received a benefit from a plea bargain. *State v. Dunams*, *supra*; *State v. Wing*, 51,857 (La. App. 2 Cir. 2/28/18), 246 So. 3d 711. However, the failure to articulate specific reasons for consecutive sentences does not require remand if the record provides an adequate factual basis to support consecutive sentences. *State v. Robinson*, *supra*.

La. R.S. 14:64(B) instructs that a person who commits the crime of armed robbery shall be imprisoned at hard labor for not less than 10 years

and for not more than 99 years, without benefit of parole, probation, or suspension of sentence.

Our review of the jurisprudence shows that different victims, places, or dates mean different transactions and different schemes or plans. *See State v. Dunams, supra*; *State v. Dagenhart*, 39,874 (La. App. 2 Cir. 8/17/05), 908 So. 2d 1237, *writ denied*, 05-2421 (La. 4/24/06), 926 So. 2d 539; *State v. H.B.*, 06-1436 (La. App. 3 Cir. 4/4/07), 955 So. 2d 255. In *State v. Hymes*, 04-320 (La. App. 5 Cir. 10/12/04), 886 So. 2d 1157, *writ denied*, 04-3102 (La. 4/1/05), 897 So. 2d 599, the defendant committed nine offenses on six separate days over the course of about two weeks, and each charge involved a different victim. Some of the offenses included robbing a hardware store, two restaurants, a clothing store, and a candy store. More than one of the offenses occurred on the same day. *Id*.

The Fifth Circuit determined that each charge on the bill of information involved a different victim. *Id*. Furthermore, while the offenses were similar in nature, the court reasoned that they were not part of the same act or transaction nor were the actions part of a common scheme or plan. *Id*. The court ultimately held that the defendant's sentence of 138 years total for all counts was supported by the record because of the separate and distinct nature of the acts as well as the seriousness of the offenses. *Id*.

Similarly, in *State v. Dunams, supra*, this court determined that the defendant's crimes were separate and distinct crimes that occurred at two locations when he robbed a liquor store and a restaurant at gunpoint. This court stated that there were different victims involved in each armed robbery and they occurred two hours apart. This court said that the record was silent about whether Dunams planned the robberies and said nothing about what

18

occurred between the robberies. This court determined that Dunams' crimes were not part of a common scheme or plan. *Id*.

While the trial court failed to address whether James' offenses were part of a common scheme or plan, the record reflects that these offenses were separate and distinct acts. First, the offenses occurred at three different locations: a Subway restaurant, a Little Caesar's restaurant, and a Valero gas station. Similarly, the offenses involved different sets of victims. While defense counsel questioned Det. Belanger about James' report that a person named "D.D." ordered him to commit the robberies, the detective stated that his attempts at verifying what James alleged came to nothing. There is nothing else in the record to show that James strategically planned the robberies. The record is silent as to what happened between the robberies. Consequently, we find that James' actions were not part of a common scheme or plan.

At the sentencing hearing, the trial court stated that it considered the aggravating and mitigating factors found in La. C. Cr. P. art. 894.1 and James' criminal history. The court found that there was a risk that James would commit another crime, he needs custodial treatment, and a lesser sentence would deprecate the seriousness of his crimes. The court noted that a firearm was used in the commission of his offenses, and that defendant had a prior conviction for armed robbery. The trial court then detailed the particular aggravating factors that it found applicable to James. The court stated that none of the mitigating factors applied. The court reviewed the information from James' PSI including his age, education, employment history, family ties, and criminal history, which included a conviction for

19

armed robbery in Bossier Parish and a conviction for possession of controlled dangerous substance in Texas.

The trial court then sentenced James to 12.5 years for each count of armed robbery. The court instructed that the sentences are to run consecutively to each other and any other sentence James is required to serve. In total, James was sentenced to 37.5 years. The record in this matter provides an adequate factual basis to support consecutive sentences in this case.

In this matter, the three armed robberies involved several victims as well as created a serious danger to the victims as James used a firearm in the commission of the robberies. The victims testified how they felt threatened, terrified, and were worried for their safety while being held at gunpoint by James. We note that one of James' victims was 16 years old at the time of the robbery. Lastly, the trial court imposed lower range sentences for each count of armed robbery. For each armed robbery charge, the trial court sentenced James to serve 12.5 years without benefits. James was also given credit for time served. Given the facts of the case and the record before us, we cannot say James' sentence of 37.5 years shocks the sense of justice or is grossly disproportionate to the seriousness of the offense. Therefore, the trial court did not abuse its discretion in ordering the sentences to be served consecutively. This assignment of error lacks merit and James' sentences are affirmed.

*Errors Patent*

The record has been reviewed for errors patent and none were found.

## CONCLUSION

For the foregoing reasons, the convictions and sentences of defendant, Jermon James, are affirmed.

**AFFIRMED.**

**HUNTER, J.**, **concurring in part and dissenting in part.**

I concur in the majority's decision to affirm the trial court's ruling with regard to defendant's statement to law enforcement officers.

However, I dissent from the decision to affirm the consecutive nature of defendant's sentences. For this 20-year-old offender, I believe concurrent, rather than consecutive, sentences should have been imposed, especially since the convictions arise out of the same course of conduct within a relatively short period of time. *State v. Watson*, 372 So. 2d 1205 (La. 1979); *State v. Gant*, 54,837 (La. App. 2 Cir. 1/11/23), 354 So. 3d 824.

1